STATE v. J. C. GALLOP.

(Decided February 20, 1900.)

*Indictment—Act 1897, Chapter 291, Section 7—Gunning and Fishing in Currituck Sound—Constitutionality of the Act.*

1. The ownership of game is in the people of the State, and the right to hunt and kill game may be granted, withheld, or restricted by the Legislature.

2. Game does not become private property until reduced to possession.

3. Adjacent landowners have no right to obstruct duck shooting in Currituck Sound.

4. Landowners can prevent others from hunting on their land, in virtue of their right to keep trespassers off, or by statutory enactment.

5. The Legislature may prohibit even landowners from hunting and fishing on their own land at certain seasons, and may exclude non-residents from the privilege altogether.

6. The Legislature was within its power, when it forbade anyone to interfere with any citizen gunning or fishing in Currituck Sound.

INDICTMENT under Act of 1897, chap. 291, for obstructing gunning and fishing in Currituck Sound.

The case is stated by Justice CLARK, as follows:

Appeal from *Starbuck, J.,* Fall Term, 1899, CURRITUCK Court. The defendant, who appealed from a Justice of the Peace, was tried for violation of sec. 7, chap. 291, Laws 1897, entitled: "An act to regulate gunning and fishing in Currituck County." Said sec. 7 provides: "It shall be unlawful for any person hired or employed to lay around, sail around or stop anywhere near any citizen who may be gunning or fishing in Currituck Sound or tributaries for the purpose of

keeping them from shooting, or damage his shooting or fishing; any person so offending shall be guilty of a misdemeanor," the penalty being fixed within the jurisdiction of a Justice.

The evidence was as follows: One Jesse Owens for the State, testified: "I live in Currituck County; 'Buzzard's Lead' leads into the sound, and Horse Pond Ditch joins into this 'lead.' Brother and I, in 1897, were duck hunting in this lead, and had our decoys tied out in the sound; we were in our boat, and had a blind in front of us; we were eighteen feet from the shore in two and one-half feet water—our blind was all around the boat. Defendant Gallop ran his boat between us and the marsh; he asked us if we knew we were trespassing, ordered us to take up our decoys, and we refused. He was in a sail boat, and we asked him to leave; he did not; and I told him if he did not I would put the law on him; he stood there an hour and a half; he took his mast and settled it in the marsh, and left his sail fluttering so that no ducks would come; it stood there until dinner time, and destroyed our gunning. Gallop said that he would not leave; that he was employed to do it." On cross-examination, this witness further said: "This was in Currituck Sound, at the mouth of Buzzard's Lead. The lead goes from the main body of the sound up into the marshes. Gallop is employed by the Currituck Shooting Club to look after the marsh. This marsh was the club's property. It was about November 2, 1897. He stayed aboard his boat one and one-half hours, with his bow against the marsh—the boat itself afloat, and not on the club's property. The marsh was the club's shooting property. When we left, the defendant, Gallop, got his sail and left. He said to us at the time of this occurrence that he was employed to watch the marshes, and to lay around people to keep them off the marsh."

No other evidence was introduced, and defendant asked the Court to charge that if the jury believed the evidence they should find a verdict of not guilty. Refused, and defendant excepted.

The Court charged the jury that: "To find the defendant guilty the jury must be fully satisfied that the following were the facts: That Jesse Owens was a citizen of the State engaged, upon the occasion testified about, in duck shooting; that defendant, for the purpose of destroying the shooting of Owens, came up in his boat, stopped and stayed near the said Owens, and set up his mast and sail in the marsh near by; that the defendant did thereby destroy the shooting of said Owens, and that defendant was employed for that purpose; that if the jury were not fully satisfied that these were the facts, they should find the defendant not guilty." The defendant excepted to the charge. Verdict of guilty. Judgment, and appeal by defendant.

*Messrs. Pruden & Pruden,* and *Shepherd & Shepherd,* for appellant.

*Messrs. E. F. Aydlett, P. H. Williams,* with the *Attorney-General,* for the State.

CLARK, J., after stating the case. The evidence is that the decoys, where the ducks were invited, and expected to alight, were "tied out in the sound." But even had they been in the "lead," that, according to the evidence, would have been one of the "tributaries of the sound" within the language of the act. The sole question then, is as to the constitutionality of the act under which the defendant, employed by the adjacent landowners for the purpose of interfering with duck hunting by others on the sound or one of its tributaries on the water front opposite their land, is indicted for preventing duck hunting there by the prosecutor.

The evidence states that the boat of the defendant was "not on the club's property," so the prosecutor who was still farther out was not a trespasser and liable as such, but had he been himself liable to indictment for trespassing, that would have been no defense to the defendant for acts avowedly done for the purpose of interfering with the prosecutor's hunting upon "the sound or one of its tributaries," and not merely to procure his removal from premises on which he was trespassing. The defendant left his sail fluttering, so no ducks would come, and said he was employed to do it.

The shooting club, which employed the defendant for the purpose of breaking up or discouraging duck hunting on the sound and its tributaries on their water front, it was stated on the argument, bought the land for the purpose of enjoying such hunting themselves, and doubtless deem it a hardship that they can not keep off others.

The ownership of game is in the people of the State, and the Legislature may withhold or grant to individuals the right to hunt and kill game, or qualify or restrict it, as in its opinion will best subserve the public welfare. *Magner v. The People,* 97 Ill., 320, 334; *State v. Rodman,* 58 Minn., 393. No one has property in animals and fowls, denominated "game," until they are reduced to possession. 2 Kent Com. (8th Ed.), 416 *et seq.;* Cooley on Torts, 435; *State v. House,* 65 N. C., 315. The shooting club owned the adjacent shore, but they could have no property rights in the wild ducks which came, like the wind, whence they would and went where they listed. The landowners had no right to prevent their settling in the sound to the lure of the prosecutor's decoys, and the statute made it a misdemeanor to prevent them.

At common law, title to game was in the King (with us now in the sovereign people), and no one could hunt game even on his own land without a franchise from the sovereign. 2 Bl.

STATE *v.* GALLOP.

Com., 411; 4 Bl. Com., 174. Wild game within a State belongs to its people in their collective sovereign capacity. It is not the subject of private ownership except when some express statute confers it. *Ex Parte* Maier, 103 Cal., cited with approval in *Geer v. Connecticut,* 161 U. S., 519, 529. With us, landholders can keep others from hunting on their land, not by virtue of their ownership of the game, but from their right to keep trespassers off the land, or by express statutory enactment. The Legislature has constantly asserted the State's sovereignty by prohibiting the owners of land, equally with others, from hunting or fishing at certain seasons, or by certain methods, or for a certain number of years, and as to some animals or fowls at any time. *Phelps v. Racey,* 60 N. Y., 10; *State v. Norton,* 45 Vt., 258; or forbidding anyone having game, dead or alive, in possession. *Haggerty v. Storage Co..* 40 L. R. A., 151. Maine, in his "Village Communities," 142, says, this ownership of game by the sovereign has been in the common law from the earliest time. The same is true as to fish, and the right of the State to regulate or prohibit fishing is well settled. *Burnham v. Webster,* 5 Mass., 266; *Nickerson v. Brackett,* 10 Mass., 212; *Gentile v. State,* 29 Ind., 409. Even to a marine league out to sea, since the jurisdiction of the State extends that far. *Manchester v. Massachusetts,* 139 U. S., 240.

So well recognized is it that the ownership of game and fish is in the State and not in individuals, that the decisions are uniform that a State may confer exclusive right of fishing and hunting upon its citizens, and expressly exclude non-residents, without infringing that provision of the Constitution of the United States (Art. IV, sec. 2) which provides that "the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States." *McCready v. Virginia,* 94 U. S., 391; *State v. Medbury,* 3

R. I., 138; *Paul v. Hazleton,* 37 N. J., 106, and may impose higher penalties on non-residents who violate the game laws than on residents. *Allen v. Wykoff,* 48 N. J. L., 90; 8 Am. and Eng. Enc. (1st Ed.), 1032.

Indeed, so completely is the ownership of public waters in the State (subject to the paramount control of the United States as to navigation) that the State can absolutely forbid the use of its waters for fishing or planting oysters by non-residents (*McCready v. Virginia, supra*), and of course for hunting purposes. And the State may forbid the transportation of dead game beyond its borders, or killing or having it in possession for that purpose. *Geer v. Connecticut, supra.*

So the shooting club, the owners of the adjacent land, had no right of hunting upon their own land contrary to regulations prescribed by law, and the law gave them no rights over the hunting on the sound and its tributaries superior to that of the prosecutor. The Legislature · was within its power when it forbade anyone to interfere with "any citizen gunning or fishing in Currituck Sound or its tributaries to keep them from shooting," etc.

Nor is it a valid objection that the act here forbidden is not made a crime elsewhere in the State, since it bears alike on all persons in the defined locality. *Broadfoot v. Fayetteville,* 121 N. C., 418, citing numerous local acts, forbidding sale of liquor, sale of seed cotton, stock running at large, etc. *State v. Jones, Ibid,* 616; *State v. Groves, Ibid,* 632; *Guy v. Commissioners,* 122 N. C., 471; *Bennett v. Commissioners,* 125 N. C., 468.

No error.