## BROOKS v. TRIPP.

(Filed April 26, 1904).

FISH AND FISHERIES—*Taxation—Constitutional Law—Customs—Acts 1903, ch. 414.*

An act levying a tax upon all clams and oysters shipped out of a county is constitutional.

DOUGLAS, J., dissenting.

ACTION by J. W. Brooks and others against L. C. Tripp and others, heard by *Judge G. S. Ferguson,* at March Term, 1904, of the Superior Court of BRUNSWICK County. From a judgment for the defendants, the plaintiffs appealed.

*Russell & Gore,* for the plaintiffs.
*Cranmer & Davis,* for the defendants.

CLARK, C. J. This is an action to restrain the execution of chapter 414, Laws 1903, its unconstitutionality being averred on the ground that it lays a tax of three cents per bushel on clams, two cents per bushel on oysters in the shell and two cents per gallon on shucked oysters "shipped out of said county," and not also upon the shell-fish situate, dug or consumed within said county, and· that the said tax amounts to an impost or export tax and is not levied for the purpose of inspection.

The act in question is entitled "An act to protect and promote the shell-fish industry of Brunswick." If such is its true purport and object, it is within the police power of the State, and a tax levied for such object would be legal although laid only upon shell-fish in that county. If levied upon shell-fish in that county only for the purpose of raising revenue for the State treasury, it would be forbidden

by the Constitution because not laid by "uniform rule."
*State v. Moore,* 113 N. C., 697, 22 L. R. A., 472.   But
the presumption is that a statute is constitutional unless the
contrary clearly appears.   *Sutton v. Phillips,* 116 N. C.,
502.   An examination of the statute shows that for the
purpose of enforcing the laws and regulations to protect
shell-fish, and especially the prohibition of disturbing their
beds during the prescribed "close season," the Governor is
authorized to appoint a shell-fish commissioner at a salary
of $400 per annum, and such commissioner is empowered to
appoint "two or more sub shell-fish commissioners to aid him
in his work, who shall receive $25 each per month while so
employed, and that the fund raised by the above tax is to
be paid to the county treasurer, and the surplus (if any)
shall be paid by him into the State treasury after "first
deducting" the salaries of the aforesaid officers.   It is fur-
ther provided that such officers shall receive no compensa-
tion whatever except out of said funds.   From the title and
general purport of the act, and especially the provision for
the appointment of an unlimited number of deputies, it is
clear that there was no expectation or intention to raise any
money for the State treasury (and none has been paid into
the State treasury from this source), but that the object was
solely to provide salaries for those engaged in enforcing
the regulations for the protection of shell-fish in Brunswick
County.   It must clearly appear that the object was not that
recited, but was in fact to raise revenue for the State before
the act can be declared unconstitutional.   The statute may
be unguarded in not restricting the number of sub shell-
fish commissioners, but the Legislature may have thought
this was sufficiently done by providing that the officers should
receive no compensation except from this fund.   If there
is a defect in this regard, making the act liable to abuse,

this is a matter for legislative correction, but it does not render the statute unconstitutional.

The tax required for the enforcement of a police regulation is not a tax within the meaning of our Constitution requiring uniformity and equality in taxation, but "is a proper mode of providing for the compensation" of an officer designated to enforce such regulation in the prescribed territory "and the payment of any expenses incidental to this" duty. *State v. Tyson,* 111 N. C., 687. Local legislation in the nature of police regulation has always been sustained—see as to the sale of liquor, sale of seed cotton, fence laws, cattle running at large, working public roads and such legislation for many other purposes, the authorities collected in *State v. Sharp,* 125 N. C., 632, 74 Am. St. Rep., 663.

In fact, this statute applies uniformly to all citizens of Brunswick and all others, whether residents or nonresidents of this State, who go to that county to take shell-fish for shipment. But even if the act had forbidden nonresidents of this State to take shell-fish in that county, it would have been competent for the Legislature to so enact, for the ownership of game and fish is in the State, and license to hunt or fish is not an immunity or privilege of the citizens of this State. *State v. Gallop,* 126 N. C., 983, and cases cited; *McCready v. Virginia,* 94 U. S., 391. In *Chambers v. Church,* 14 R. I., 398, 51 Am. Rep., 410, it is held that a State "may forbid nonresidents from catching fish in its waters for manure and oil, and manufacturing manure and oil from fish caught in its waters." In *Harvey v. Compton,* 36 N. J. Law, 507, in the matter of prohibiting nonresidents from gathering oysters within the waters of New Jersey, the Court says: "Such enactment for the protection of property must be considered as a matter of internal police, and not a regulation of commerce with foreign nations or among the States. Neither does it controvert the provisions of the

135——11

BROOKS *v.* TRIPP.

United States Constitution that the citizens of each State shall ·be entitled to all the privileges of citizens of the several States." But this statute, in fact, makes no discrimination in favor of the citizens of North Carolina.

It is further and chiefly contended that the act is unconstitutional in that it levies the tax solely upon shell-fish shipped out of the county and not also upon the other shell-fish situate, dug or consumed in said county. The tax could not be levied upon all the shell-fish "situate" in Brunswick County, because there is no possible means to ascertain this. It would also be difficult to ascertain the number dug and consumed. The ascertainment of the number shipped out of the county is more practical, and the levy of a tax thereon is · a reasonable method of deriving funds for the enforcement of the regulations for the protection of shell-fish, and is not for revenue. It is not unreasonable that no tax is laid upon shell-fish consumed for the sustenance and support of the people. residing in the county. The tax laid is not an export tax, but is simply the method chosen by the Legislature as the least onerous and most practicable system of raising the necessary funds to defray the expenses of protecting the shell-fish industry in the county of Brunswick. The regulation of fishing and hunting is, as above said, a matter entirely within the discretion of the State. *Lawton v. Steele,* 151 U. S., 133; *State v. Gallop,* 126 N. C., 984.

In refusing to hold the statute unconstitutional there was No Error.

DOUGLAS, J., dissenting. The opinion of the Court rightly says: "If (the tax were) levied upon shell-fish in that county for the purpose of raising revenue for the State treasury, it would be forbidden by the Constitution because not laid by uniform rule." The opinion further says, and I think correctly so, that "from the title and general purport of the

act, and especially of the provision for the appointment of an unlimited number of deputies, it is clear that there was no expectation or intention to raise any money for the State treasury (and none has been paid into the State treasury from this source), but that the object was solely to provide salaries for those engaged in enforcing the regulations for the protection of shell-fish in Brunswick County." The act provides that "the tax so collected is to be paid to the County Treasurer of Brunswick County and *by him paid to the State Treasurer,* after first paying the shell-fish commissioner a salary of $400 per annum, and sub shell-fish commissioners, etc." The act further provides that "The shell-fish commissioner shall be one of the *qualified voters* of Brunswick County," and that he in turn "shall have the power to appoint two or *more* sub shell-fish commissioners out of the *qualified voters* of Brunswick County." No other qualifications appear to be required, and while their general duties "shall be to protect and promote the shell-fish interests of Brunswick County," their special duties seem to be to collect sufficient tax to pay their salaries. It seems to be conceded that if the tax were a source of revenue to the State the act would be unconstitutional. I gravely doubt whether the constitutionality of an act of the Legislature should ever be made to depend upon the absorptive powers of any set of officers. However, it is due to them to say that so far they seem to have effectually maintained its constitutionality under the test indicated in the opinion of the Court. I cannot bring my mind to assent to the validity of such legislation, which, in my opinion, substitutes the will of the draughtsman for that of the General Assembly. It is due to the Legislature to say that the act was passed in the closing days of its session.