# The State *v.* Parker.

## *Violating Oyster Law.*

(Decided May 28, 1912.   59 South. 741.)

1. *Appeal and Error; Appeal by State; Scope.*—Under the provisions of section 6246, Code 1907, on appeals by the state, the appellate courts are limited to a consideration of the constitutionality of the statute in question, and if the statute be constitutional, the judgment declaring it unconstitutional must be reversed, although it is apparent that the indictment founded thereon cannot be sustained.

2. *Licenses; Constitutionality; Property Tax; Value.*—General Acts 1911, p. 458 and 466, does not impose a tax on property but merely a charge on the business or acts of marketing oysters, and hence, is not violative of section 211, Constitution 1901.

3. *Same; Double Taxation.*—Sections 8 and 9, Acts 1911, pp. 458, 466, when construed together, do not attempt to impose an additional tax upon a privilege already taxed.

4. *Same; Powers of Legislature; Method.*—The method of exaction adopted by General Acts 1911, pp. 458, 466, is one that may be resorted to either in the exercise of the power of taxation given the legislature, or in the exercise of its police powers, and if its action may be justified as an exercise of either power, it will be referred to that power without inquiry as to whether it would be justified as a legitimate exercise of the other power.

5. *Commerce; Regulation; Taxation.*—The provisions of General Acts 1911, pp. 458, 466, refer only to oysters taken in waters within the jurisdiction of the state, and hence, are not invalid as an interference with interstate commerce.

6. *Constitutional Law; Validity; Construction.*—Where the terms of the statute may reasonably be construed as having a meaning which will render such statute constitutional, that meaning should be accorded to it by the court.

7. *Fish and Oysters; Police Power; Public Health and Safety; Tax.*—Section 9, General Laws 1911, pp. 458-466, so far as applicable to an owner of oysters taken from private bedding grounds, is a valid police regulation, relating to the public health and safety, and the amount of tax imposed is such as the legislature may exact to defray the expenses incurred in its administration.

APPEAL from Mobile City Court.

Heard before Hon. O. J. SEMMES.

Joseph Parker was prosecuted under a complaint charging a failure and refusal to pay a tax of three cents per barrel on three hundred barrels of oysters taken from the public reefs or private bedding grounds of the state of Alabama, for packing, canning, etc., or for sale. Demurrers were sustained to the complaint on account of the unconstitutionality of the statute, and the State appeals. Reversed and remanded.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, INGE & McCORVEY, and N. R. CLARK, for the State. The oysters of the state belong to the people of Alabama, and they may, through the legislature, adopt all precautions and regulations deemed advisable or necessary for their preservation and increase.—State v. Harrub, 95 Ala. 176; Am. Ex. Co. v. The People, 24 N. E. 758. The State has a right to license its own citizens to catch and take oysters and to regulate the sale of them within its own limits.—State v. Harrub, supra; Dix v. Lloyd, 36 Fed. 651. The charge of three cents per barrel is therefore a constitutional exaction of a special privilege.—State v. Corson, 50 Atl. 780. The tax of three cents per barrel is not a tax for the purpose of raising revenue.—Sections 10 and 42, General Acts 1911, p. 458; Kennamer v. The State, 150 Ala. 74; Authorities supra; Foot & Co. v. Stanley, Court of App. of Md. October Term 1911; 16 Wall. 36; Applegart v. The State, 42 Atl. 941; s. c. 31 Atl. 961.

WEBB & McALPINE, for appellee. Our constitution does not permit of a state inspection of merchandise.— State v. McGough, 118 Ala. 159. Within the 600 yard

[The State v. Parker.]

limit and on leased grounds, oysters planted in reef by the owners thereof are as much personal property as his horses, etc., and are taxable as personal property, under section 2082, subd. 14, Code 1907. This being the case, and our tax being to the limit, a further tax cannot be put upon that property, and the three cent tax would be a tax fixed upon it without regard to value.—*Kelly v. Montgomery,* 142 Ala. 558. After a discussion of the various sections of the law counsel conclude and insist that it is violative of the constitution for the reasons above set forth, and for the further reason that it authorizes an imprisonment for debt. They also insist that the cases cited by the State are without application on the points to which they are cited, and not applicable to the case at bar.

WALKER, P. J.—This was a prosecution against the appellee which was commenced by an affidavit or complaint, charging "that within 60 days Joseph Parker did fail or refuse to pay the tax of 3 cents per barrel on 300 barrels of systers caught and taken from the public reefs or private bedding grounds of the state of Alabama for packing, canning, shipping, or for sale, contrary to law, against the peace and dignity of the state of Alabama." The court sustained a demurrer to the affidavit or complaint, upon the ground that "the act under which it is drawn is unconstitutional."

The case is brought into this court by an appeal taken under the provision of the statute (Code, § 6246) allowing an appeal by the state "in all criminal cases when the act of the Legislature under which the indictment or information is preferred is held to be unconstitutional." "The statute under which the appeal is taken limits the consideration and decision of this court to the constitutionality of the statute drawn in question.

If the statute be constitutional, the judgment adjudging it unconstitutional must be reversed, though it be apparent the indictment founded on the statute cannot be maintained."—*State v. Street,* 117 Ala. 203, 212, 23 South. 807. Some questions which have been made subjects of discussion in the arguments of counsel are not, under the rule stated in the quotation just made, presented for our consideration or decision.

The act with which the defendant was charged was in contravention of the terms of section 9 of the statute known as the Alabama Oyster Commission Law (General Acts Ala. 1911, pp. 458, 466), which provides "that in addition to the privilege license or tax required in this act a further tax of three cents per barrel is hereby laid upon all oysters, canned, packed, shipped, or sold in and from this state, and on all oysters caught and taken from the public reefs and private bedding grounds, for packing, canning, shipping, or for sale. * * * The taxes hereby provided for in this section are to be levied and collected only when the oysters * * * are caught, canned, packed, or shipped for commercial purposes. This tax shall be paid by the person, firm or corporation first marketing the oysters, * * * and any person who has purchased the same from a dealer who has paid the tax thereon shall not be taxed again." The demurrer to the affidavit or complaint raised the question of the constitutional validity of the provision for the imposition of such a charge "on all oysters caught and taken from the public reefs and private bedding grounds for packing, canning, shipping or for sale," as it is a violation of this particular feature of the provision quoted which is charged against the defendant.

The validity of the imposition in question is attacked upon grounds which may be grouped and stated as fol-

lows: (1) That the tax is one upon property, and is invalid because the provision for its imposition is made in disregard of the constitutional requirement (Constitution, § 211) that such a tax "shall be assessed in exact proportion to the value of such property"; (2) that the tax, being "on all oysters caught and taken from the public reefs and private bedding grounds, for packing, canning, shipping, or for sale," applies as well to oysters caught or taken in waters within the jurisdiction of another state as to those caught or taken in the waters of this state, and is invalid as involving an unauthorized interference with or charge upon interstate commerce; (3) that, the object of the tax in question being embraced within that of a privilege tax already provided for in another part of the same statute, this additional imposition is really an attempt to tax in the same way again a part of a whole that already had been taxed, and is subject to the objection mentioned in the opinion in the case of *City Council of Montgomery v. Kelly,* 142 Ala. 552, 558, 38 South. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43, to such an accumulation of burdens upon a single subject of taxation; and (4) that if the imposition in question is regarded as a privilege tax, or a tax upon acts done, it cannot be sustained, in so far as it is applicable to the charge made in this case, which, being in the alternative, does not necessarily import anything more than a failure of the defendant to pay the prescribed tax on oysters caught or taken by him on his own private bedding grounds, for packing, canning, shipping, or for sale, as it constitutes an unwarranted interference with one's right to sell his own property, certainly so far as it is applicable to the owners of, or oysters caught or taken from, private bedding grounds.

The first-mentioned ground of objection cannot be sustained without first determining that the charge in question is a tax upon property, within the meaning of the constitutional requirement that such taxes shall be assessed "in exact proportion to the value of such property." The distinction between property as a subject of taxation and other subjects of taxation is a familiar one in this state. The recognition of this distinction by the court in the opinion rendered in the case of *Lott v. Ross & Co.*, 38 Ala. 156, resulted in the conclusion that an authority conferred by statute upon a local tribunal to assess and collect a tax, "not exceeding twenty cents upon each hundred dollars of taxable property within said county," did not confer the power to levy a tax of 20 cents upon each $100 of the gross amount of sales of merchandise made during the tax year. It was determined in that case that the statute there under consideration authorized the assessment and collection of a tax upon one subject of taxation, and that the alleged tax there brought into question was unauthorized, as it was upon another and different subject of taxation, which the statute had not made liable to such an imposition. In discussing the question presented, it was said in the opinion: "A tax upon 'the gross amount of sales of merchandise,' under section 391 of the Code [1852], is not a tax upon the goods themselves, or the fruits of the sale, but upon the business or act of selling. This is not, then, a property or income tax, but an occupation or privilege tax; the amount being regulated by the extent to which the privilege has been enjoyed. * * * In the present case, we are unable to discover anything in the context which requires us to wrest the words from their ordinary meaning; and certainly we cannot affirm that the plain object of this law will be defeated if we do not

[The State v. Parker.]

interpret them in the large sense contended for. The context shows that the words cannot be construed to embrace all taxable subjects. The tax is to be assessed 'upon each hundred dollars' of the things taxed; and as there is a large class of taxable subjects not susceptible of valuation, and of which a pecuniary amount is not predicable, such as the poll, licenses, professions, seals, suits, etc., it is obvious that we cannot understand the words as embracing everything subject to taxation under the general law." On similar considerations, the conclusions have been reached that a tax of 2 per cent. levied on the gross amount of the receipts of every telegraph company, "derived from business done by it in this state," was not a property tax, nor violative of any constitutional provision regulating taxation (*Western Union Telegraph So. v. State Board of Assessment,* 80 Ala. 273, 60 Am. Rep. 99); that a statute levying a tax of 1 per cent. of the gross receipts of specified enterprises and businesses, after deducting the expenses of carrying on such business, was a provision for occupation or privilege taxes, and not a tax on property, and therefore was not subject to the constitutional provision as to taxes on property (*Capital City Water Co. v. Board of Revenue,* 117 Ala. 303, 23 South. 970); and that a tax on the gross amount of the sales of a retail merchant is not a tax on property, though the amount of the tax is determined by the amount of the stock of merchandise employed in the business (*Goldsmith v Mayor and Aldermen of Huntsville,* 120 Ala. 182, 24 South. 509; *Saks v. Mayor and Aldermen of Birmingham,* 120 Ala. 190, 24 South. 728). That the charge now in question—being laid, not upon oysters as property subject to taxation, but upon oysters canned packed, shipped, or sold, or caught and taken from the public reefs and private bedding

grounds, for packing, canning, shipping, or for sale, and only when they are caught, canned, packed, or shipped for commercial purposes, the amount to be paid by the person, firm, or corporation first marketing them—is not a tax upon property, but a charge or imposition upon the business or acts of marketing oysters, is a conclusion plainly supported by the rulings made in the cases above referred to. It follows from this conclusion that the first-mentioned ground of attack upon the validity of the provision in question cannot be sustained.

As liability for the imposition in question is by the statute made to result from a disposition of oysters located in this state at the time of such disposition, it seems that the validity of the provision would not be affected by the circumstance that the oysters so disposed of were caught or taken from waters within the jurisdiction of another state; there being no discrimination against oysters so taken.—*City of Anniston v. Southern Railway Co.,* 112 Ala. 557, 20 South. 915; *Applegarth v. State,* 89 Md. 140, 42 Atl. 941; Gray on Limitations of Taxing Power, §§ 847, 858. But the language of the provision which is under consideration is not such as to require that it be construed as making the imposition applicable to the marketing of oysters caught or taken in waters other than those within the jurisdiction of this state. In many parts of the statute of which that provision is a part, both those preceding it and those following it, are found other provisions, which are made specifically applicable to "the public reefs and private bedding grounds of the waters of this state." It may be said, speaking of the scheme of the act as a whole, that the purpose of its provisions was, as expressed in its title, "for the preservation, protection, development and improvement of the oyster reefs and

[The State v. Parker.]

beds in the waters of Alabama; for the preservation, protection, development, encouragement, and improvement of oyster, shrimp, terrapin, turtle and other sea food products industry in the state of Alabama," etc. In speaking in such a connection of oysters caught or taken from "the" public reefs and private bedding grounds," the Legislature may well be understood as referring only to oysters taken or caught from such reefs or bedding grounds as were the objects of the regulations which it was prescribing, and not to those caught or taken elsewhere.

As the provision in question is fairly susceptible of such a construction as to make the second ground of objection to its validity, which is above mentioned, wholly inapplicable to it, another meaning of its terms is not to be sought for, with a view of finding a feature in it which may render it subject to attack. If the terms of a statute may reasonably be construed as having a meaning which exempts it from attack on constitutional grounds, that meaning should be accorded to it by the courts.

The third above-mentioned ground of objection is sought to be sustained by the suggestion that the section of the statute (section 8) which immediately precedes the one in which is found the provision in question had already imposed a tax on the same subject of taxation. There is no merit in this suggestion. The provisions of section 8, requiring the payment of business or privilege taxes by retail and wholesale dealers in oysters, etc., have to do with subjects of the imposition of public charges which are separate and distinct from the one dealt with in section 9. Section 8 imposes occupation or privilege charges upon dealers, or persons whose occupation, business, employment, or vocation is to deal in oysters, etc.—to buy with the purpose

of selling. It is not every one who sells oysters who can be required to take out a license as a dealer.—*Carter v. State,* 44 Ala. 29; *Perkins v. State,* 50 Ala. 157; 13 Cyc. 286. The act charged in the information or complaint is not one which is the subject of any charge or imposition, provided for by law, other than the one required to be paid by the provision in question. It follows from this conclusion that the above-stated third ground of objection is without basis of fact to rest upon.

We come now to the consideration of the last above-mentioned ground of objection to the validity of the provision in question. In considering that ground of objection, it is necessary to determine the nature or controlling purpose of the exaction. The conclusion already has been stated that it is not a tax upon property. The nature of the charge required to be paid is not to be determined solely from the name which the Legislature gives it. It is not necessarily a revenue measure, because it is called a tax. The provision in question is for the imposition of a charge, graded as to its amount by the number of barrels disposed of, which is payable upon the marketing or introduction into the channels of commerce of the kinds of sea food products mentioned. The method of exaction adopted is one that may be resorted to in the exercise of either of two distinct legislative powers, namely, the taxing power or the police power. Indeed, sometimes such an imposition may evidence the exercise of one legislative act of both of these powers, where the subject of it is one in reference to which either of these powers may properly, by the method adopted, be put into operation.—*Davis v. Petrinovich,* 112 Ala. 654, 21 South. 344, 36 L. R. A. 615; *Kentz v. City of Mobile,* 120 Ala. 623, 24 South. 952; Gray no Limitation of Taxing Power, § 1405. The

[The State v. Parker.]

Legislature possessed both the powers mentioned. If, by virtue of its possession of either of those powers, it had the right to require the payment of such a charge as the one in question, its action may be referred to that power, without inquiring whether it also could be justified as a legitimate exercise of the other power.

In determining whether the provision in question may be sustained as an exercise of the state's police power, it is pertinent to consider the nature and purposes of the statute of which it forms a part. The general purpose and scope of that statute are indicated by the terms of its title, which is as follows: "An act for the preservation, protection, development and improvement of the oyster reefs and beds in the waters of Alabama; for the preservation, protection, development, encouragement, and improvement of oyster, shrimp, terrapin, turtle and other sea food products industry in the state of Alabama; to provide for the establishment of a board of commissioners, to prescribe their powers and duties, to provide for their compensation, to establish, locate, and provide for the furnishing of its office; to regulate the manner and time of taking and catching oysters, shrimp, terrapin, turtle and other sea food products from the public waters and private bedding grounds of the state; to prescribe and regulate the measure of oysters bought and sold in the shell; to prescribe license fees for boats engaged in taking and catching oysters, shrimp, terrapin, turtle and other sea food products; to fix and prescribe a tax upon oysters, shrimp, terrapin and other sea food products, canned, packed, shipped, or sold raw or cooked; to provide for the officers, employees and agents of the commission, to prescribe their duties and powers and fix their compensation; to provide for the protection and patrol of the oysters grounds and public waters of the state; to pro-

16 CA

vide for the leasing of water bottoms owned by the state; to fix penalties for the violation of the provisions of this act; to create a fund for moneys arising under the provisions of this act for the purpose of defraying the expenses of the commission; to provide for obtaining twenty-five per cent. of the shells produced by canning factories in the state, and generally to regulate and control the oyster, shrimp, terrapin, turtle, and other sea food products industry in the state and all matters connected therewith; to fix and prescribe a tax upon canning factories; and to fix and prescribe a privilege or business license or tax on all dealers in oysters, shrimp, terrapin, turtle and other sea food products and to provide for reports to be made to the commission by agent or representatives of transportation and express companies, and by all persons taking, catching, or selling oysters, shrimp, terrapin, turtle and other sea food products."

The most cursory examination of the body of the statute leads to the conclusion that the Legislature, in its enactment, was attempting to frame an effective scheme for the regulation and control of the oyster and other sea food products industry in this state, with a view to its preservation, protection, development, encouragement, and improvement. Many of its provisions relate to operations connected with the industry in its various stages, from the start in life of the inhabitants of the sea which are the objects dealt with until they finally pass into the channels of commerce. It is obvious that, as regards many of its features, the statute was an exercise by the Legislature of the state's police power. But the claim put forward in behalf of the appellee is, in effect, that, so far as the provision in question is undertaken to be made applicable to one whose relation to oysters caught or taken is such as, from the averments

of the affidavit or complaint, the appellee's may be presumed to have been, namely, that of the owner of oysters taken or caught from private bedding grounds, it is devoid of the essential characteristics of a police measure or regulation, and cannot be sustained as such. In undertaking to support this claim, much stress is laid upon the provision of section 25 of the statute, which is as follows: "Sec. 25. That the riparian rights of the owner or occupant of lands bordering on the shores of any of the waters herein before described shall extend out 600 yards from average low water mark on a straight line approximately at right angles to the shore line of the owner of the upland, providing the said line of 600 yards shall not take in any part of what is known as a natural reef, or shall not obstruct a recognized channel, and no one shall own in fee simple the bottoms of the waters of this state except within the 600 yard limit as aforesaid." The provision by no means has the effect of withdrawing from the operation of all the other provisions of the statute the bedding grounds, or the products thereof, so recognized as subjects of private ownership. Even within the limits of such private bedding grounds, there may be what are styled as natural reefs (section 34),· the state's title to which is preserved; and many of the provisions of the statute looking to the policing of the waters in which the business regulated is conducted in many of its stages are applicable as well to private bedding grounds as to the public reefs. There also are many regulations touching the modes of conducting the operations of catching or obtaining the kinds of sea food products dealt with from which such private bedding grounds and their owners or products are not exempted.

And, finally, the provisions of section 45 of the statute are fully applicable to the private bedding grounds

and the products therefrom. That section provides "that it shall be the duties of the deputies of this commission to visit all depots of this state where oysters, shrimp, terrapin, turtle, and other sea food products are offered for sale, for the purpose of determining the fitness or unfitness of the oysters, shrimp, terrapin, turtle and other sea food products so offered for sale for food consumption. Said deputies shall be vested with the power and authority to condemn as unfit for food any oysters, shrimp, terrapin, turtle, or other sea food products which he or they may consider dangerous to health or unfit for food. If any dealer, shipper, canner, or seller, of oysters, shrimp, terrapin, turtle or other sea food products shall offer for sale to the public any oysters, shrimp, terrapin, turtle or other sea food products which are unfit for food, or shall have in his, her or its possession any of the aforesaid sea food products which are unfit for food in a place where such sea food products are offered for sale, he, she, or it shall be guilty of a misdemeanor and shall upon conviction be punished by a fine of not less than $25.00 nor more than $50.00." We think that we would be shutting our eyes to evidence found upon the face of the statute itself of its object and tendency if we refused to attribute, in some degree, at least, the prescribing of such requirements for policing and inspecting dealings or transactions, so plainly calling for precautionary measures in the interest of the public welfare, to a purpose on the part of the Legislature to protect the public health and safety. These provisions have such an obvious relation to the public welfare, looking, as they do, to the prevention of the marketing of unfit or unwholesome sea food products, that discussion is not deemed necessary to support the conclusion that they are entitled to be recognized as legitimate police regulations.—*Barrett v.*

*City of Mobile,* 129 Ala. 179, 30 South. 36, 87 Am. St. Rep. 54; *City of Chicago v. Netcher,* 183 Ill. 104, 55 N. E. 707, 48 L. R. A. 261, 75 Am. St. Rep. 93; Gray on Limitations of Taxing Power, § 1408; 2 Cooley on Taxation (3d Ed.) 1148. The public health may as well be endangered by the proprietor of a private bedding ground putting into the channels of commerce products therefrom which are unfit for food as by another doing the same thing with similar products of a public reef. There is no room for supposing that those regulations were intended to be applicable in the one case, but not in the other. When it comes to prescribing measures for preventing the marketing or introduction into the channels of commerce of sea foods which are unfit for human consumption, the statute recognizes no distinction between public reefs and private bedding grounds or their respective products.

Now, the due enforcement of this and other provisions of such a statute necessarily involves considerable expense. The required administrative machinery cannot be maintained without money. Those who reap benefits from the business so regulated, or whose conduct is subject to measures of supervision prescribed, may well be required to contribute to the expenses incurred. In the inquiry as to the propriety of such an exaction as the one under consideration, the following statement, made by Somerville, J., in delivering the opinion of the court in the case of *Van Hook v. City of Selma,* 70 Ala. 361, 45 Am. Rep. 85, is not inapposite: "We declare the true rule to be, in the case of useful trades and employments, and a fortiori in other cases, that, as an exercise of police power merely, the amount exacted for a license, though designed for regulation and not for revenue, is not to be confined to the expense of issuing it; but that a reasonable compensation may be charged

for the additional expense of municipal supervision over the particular business or vocation at the place where it is licensed. For this purpose, the services of officers may be required, and incidental expenses may be otherwise incurred in the faithful enforcement of such police inspection or superintendence." In line with that statement is the following expression of the Supreme Court of Nebraska in dealing, in the case of *Littlefield v. State,* 42 Neb. 223, 60 N. W. 724, 28 L. R. A. 588, 47 Am. St. Rep. 697, with a municipal regulation of the sale of milk: "It does not follow, therefore, that an ordinance will be held void, simply because it provides for a fund to be derived from license fees. Such a measure will be upheld by the courts whenever it appears to have been designed to promote the welfare of the public, and the revenue derived therefrom is not disproportionate to the cost of its enforcement and the regulation of the business to which it applies."

There is nothing in the terms of the statute under consideration to indicate that it was any part of its purpose, by the exaction in question, or by any other of its provisions requiring payments of money, to raise revenue applicable to any object other than the due enforcement of its requirements, or to do anything more than make suitable provision for meeting the expenses reasonably necessary to be incurred for its proper administration. On the contrary, all collections provided for are to go into a fund, from which the expenses of the enforcement of the provisions of the statute are to be paid, and upon which no other charge is made. It is not made to appear from the terms of the statute, or otherwise, that the requirement that three cents per barrel be paid on the marketing of all oysters caught or taken from the public reefs or private bedding grounds for packing, canning, shipping, or for sale, was

primarily designed as a measure for raising revenue, or, indeed, that it had any other purpose or result than to secure a suitable contribution towards the expenses involved in enforcing the provisions of the statute of which it forms a part. Nor has it been shown in any way that this and other payments required to be made were not fairly apportioned among the beneficiaries of the industry, for the proper supervision and regulation of which, in the interest of the public health and safety, and for the safeguarding of a valuable food resource of the state, the statute was devised.—*Kennamer v. State,* 150 Ala. 74, 43 South. 482; *Brooks v. Tripp,* 135 N. C. 159, 47 S. E. 401.

We are of opinion that the considerations above set out fairly lead to the conclusions that the provision in question may be classed as a police regulation, and that there is nothing in the amount of the charge imposed, or in the manner of its imposition, to give it the character of anything other than such an exaction as it is competent for the Legislature to make by virtue of the state's police power with which it is vested.

It follows from the conclusions announced that the judgment under review must be reversed .

Reversed and remanded.