A. WYLIE MOORE, JOS. B. CHESHIRE, Jr., THEO. G. EMPIE, S. H. JORDAN, E. T. STEDMAN, E. G. THOMPSON, J. J. LAWSON AND W. L. RANKIN, on Behalf of Themselves and all Other Citizens and Residents of the State of North Carolina, v. B. B. BELL, R. P. MIDGETT, R. L. GRIGGS, PIERCE HAMPTON AND W. S. NEWBERN, Members of the GAME COMMISSION of CURRITUCK COUNTY, NORTH CAROLINA.

(Filed 3 March, 1926.)

**1. Game—Hunting.**

Neither residents of the State nor nonresidents thereof have a right to hunt game except as is conferred by the State, and the Legislature has the constitutional authority to regulate or prohibit hunting, to fix licenses therefor upon the payment of money, and generally to regulate hunting, making the violation of statutes on the subject a criminal offense and punishable.

20—191

**2. Same—Police Regulations—Statutes.**

The imposition by statute of a license fee for hunting game comes within the police powers of the State, and is not a revenue measure on the subject of taxation.

**3. Game—Constitutional Law—Statutes—Several Readings—"Aye" and "No" Vote.**

A statute regulating the hunting of game and imposing a privilege fee therefor, is not required by our Constitution for its validity to pass on several days in each branch of the Legislature, with "aye" and "no" vote taken on its several readings.

**4. Same—Property Rights.**

A resident of the State who has no property in a county subject to legal game laws and regulations, is not deprived of any right absolute or relative because of the local regulations of game requiring the payment for the privilege of hunting and making a violation of the law a criminal offense.

**5. Injunction—Game—Equity—Remedies—Suits—Actions.**

The remedy by injunction to test the constitutionality of a local game law, making a violation of the statute a criminal offense, when property rights are not affected, is not open to one who has not violated the act, the remedy being at law, upon the violation of the criminal statute creating the offense.

CLARKSON, J., concurring.

APPEAL by defendants from order of his Honor, *James L. Webb,* Judge Superior Court, at Chambers, dated 22 October, 1925, from MECK-LENBURG. Reversed and dismissed.

Action by plaintiffs, citizens and residents of the State of North Carolina, to restrain and enjoin defendants, members of the Game Commission of Currituck County, from enforcing the provisions of certain statutes enacted by the General Assembly of North Carolina, creating a Game Commission for Currituck County, and conferring upon said commission certain powers relative to the protection of game in said county, upon the ground that said statutes are in violation of the Constitution of North Carolina, and therefore void. From order restraining and enjoining defendants from acting as members of said game commission, or in any way carrying out or attempting to carry out the provisions of said statutes, until the final hearing of the action, defendants appealed to the Supreme Court.

*C. A. Cochran and Cansler & Cansler for plaintiffs.*
*A. M. Simmons and J. C. B. Ehringhaus for defendants.*

CONNOR, J. Section 1 of chapter 266, Public-Local Laws 1921, entitled "An act for the improvement of the roads and for the better protection of game in Currituck County," is as follows:

MOORE *v.* BELL.

"Section 1. That no one shall hunt, shoot, kill or trap any wild duck, geese, brant, or other wild fowl, or act as guide to any one so engaged, from shore, marsh, blind or battery or other floating device, on or adjacent to the waters of Currituck Sound, or its tributaries in Currituck County, unless he shall have obtained from the clerk of the Superior Court a hunter's license as hereinafter provided."

Section 2 of said chapter prescribes the amounts to be charged for a hunter's license, and makes it the duty of the clerk of the Superior Court of Currituck County to issue license upon receipt by him of application therefor, and payment by the applicant of the amount prescribed by the statute. This amount varies, dependent upon whether or not the applicant is a resident of the State of North Carolina, and, if he is a resident of the State, whether or not he is a resident of Currituck County. The amount to be paid by a nonresident of the State is $75, with a fee of $2.00 to the clerk; by a resident of the State, who is not a resident of Currituck County, $5.00, with a fee of fifty cents to the clerk; and by a resident of Currituck County, a fee of twenty-five cents to the clerk. All applicants for a hunter's license, who are not residents of said county, are required to furnish information, in their applications, for the purpose of identification.

Section 3 of said chapter provides that no one but a resident of Currituck County shall own or operate a battery or other floating device used in the hunting of wild fowl on the waters of Currituck Sound or its tributaries in Currituck County, and requires that a resident of said county who owns or operates such battery or other device shall secure from said clerk a battery license, for which the sum of $25.00, with a fee of fifty cents to the clerk is to be charged; the number of batteries for any one season is limited to thirty, and priority in the issuance of battery licenses is given by the statute to persons who owned and operated batteries during the season of 1919-1920, provided applications are made by such persons not later than 15 October. After. said date, priority is given to applicants in the order of the filing of their applications. The owner of a battery may sell and transfer his battery, together with his right to priority in the issuance of license for the succeeding season, as provided in the statute.

Section 10 of said chapter provides that "the funds received by the clerk of the Superior Court from the sale of licenses provided for in this act shall be turned over to the treasurer of Currituck County, and from the funds so received the said treasurer shall pay such sums as may be approved by the game commission, hereinafter provided for, as necessary to secure the proper enforcement of the game laws of Currituck County, and shall turn the balance of such money into the road fund of said county."

Section 11 of said chapter prescribes penalties for violation of the provisions of the statute. The minimum penalty is a fine of $25.00; the court is empowered to impose a fine of twice the amount fixed by statute for a proper license, upon any one convicted for such violation. In addition to the fine, a license issued in accordance with the provisions of the statute may be revoked, when the holder of such license has been convicted of a violation of any of the provisions of the statute applicable to him.

Section 12 of said chapter provides for a game commission for Currituck County, to consist of five members; three of these are the clerk of the Superior Court, the chairman of the board of county commissioners, and the chairman of the road commission of said county, who are members *ex officio;* the other two members are citizens of Currituck County, elected by the three members *ex officio.* It is provided that members *ex officio* shall serve during the terms of their respective offices; each of the two elected members holds for a term of two years.

"The Game Commission shall have charge of the enforcement of this and other game laws of Currituck County and the appointment of a game warden, or of game wardens, and shall fix his or their compensation. The said commission is authorized and empowered to prescribe rules and regulations for the enforcement of the game laws and the protection of game in said county, not inconsistent with the provisions of this act."

"The Game Commission herein established shall have the power to reduce the license fees named in this act to such sums as they may find to be best from a revenue standpoint for Currituck County. The said game commission shall also have power, and it shall be its duty to make such rules and regulations in regard to applications for and the granting of licenses as the actual operation of this law and its interpretations by the courts may disclose to be helpful in or necessary to the reasonable execution and enforcement of the law; provided such rules and regulations shall not be inconsistent with the terms of the act itself, or with the law of the land." It is further provided that "if any section or subsection of this act shall be repealed or held invalid, all the other sections and subsections shall remain in full force and effect."

Chapter 266, Public-Local Laws 1921, was amended by chapter 168, Public-Local Laws, Extra Session, 1921, and was further amended by chapter 543, Public-Local Laws 1925, chapter 488, Public-Local Laws 1923, entitled "An act for the better protection of game in Currituck County," provides "that a person or persons using a stationary or float blind in the waters of Currituck Sound for the accommodation of sportsmen shall pay a license tax to said county of five dollars on each

and every blind so used. Said license to be issued by the clerk of the Superior Court of said county. The said clerk's fee shall be fifty cents for each and every set of licenses used under this act." Any person convicted of the violation of this act shall pay a fine of ten dollars. All sums collected for licenses under this act shall be applied to the highways of Currituck County.

Plaintiffs allege that said statutes are invalid for that they are revenue measures. It is admitted that the bills providing for their enactment were not read three several times in each house of the General Assembly; did not pass their three several readings in each house on three different days, and that the yeas and nays on the second and third readings were not entered on the journals as required by Article II, sec. 14, of the Constitution of North Carolina. Plaintiffs further allege that the statutes are invalid for that they arbitrarily and unlawfully discriminate in favor of residents of Currituck County and against residents of other counties in the State, with respect to the amount of the license fee for hunters in said county, and with respect to the ownership and operation of batteries or other floating devices used in the hunting of wild fowl on the waters of Currituck Sound and its tributaries in said county; and they further allege that said statutes are invalid for that they unlawfully and wrongfully undertake to create a monopoly and perpetuity in the ownership and right to operate batteries and other floating devices to be used in the hunting of wild fowl on the waters of Currituck Sound, or its tributaries in said county for the benefit of a favored class, to wit, those persons who owned and operated such batteries or other floating devices during the season immediately preceding the enactment of the act.

Upon motion of plaintiffs, an order requiring defendants to appear before the resident judge of the Fourteenth Judicial District, at Charlotte, N. C., to show cause why injunction prayed for in the complaint should not be granted was, served on defendants in Currituck County. At the hearing, the court was of the opinion that the statutes are invalid upon all three grounds, upon which they are attacked by plaintiffs, and thereupon ordered that "defendants and each of them, be and they are hereby enjoined and restrained from and after 1 December, 1925, and until the hearing of this action upon its merits, from acting as members of a Game Commission for Currituck County, or in any way carrying out or attempting to carry out any of the provisions of chapter 266, Public-Local Laws 1921, or of chapter 168, Public-Local Laws, Extra Session, 1921, or of chapter 488, Public-Local Laws 1923, or of the act known as House Bill 1624, Senate Bill 1429 of the session of the General Assembly of North Carolina for the year 1925." (Chapter

MOORE *v.* BELL.

543, Public-Local Laws 1925.)   Defendants excepted to this order, and assign same as error.

Defendants' first contention, upon their appeal to this Court, is that the order herein is erroneous, for that this is an action to restrain and enjoin the enforcement of a statute, defining certain acts as crimes, and prescribing punishments therefor.   Defendants contend that for this reason the action cannot be maintained.

Neither of plaintiffs is a resident of Currituck County.   It is not alleged in the complaint, nor is it found by the court that either of plaintiffs has any property or property rights which are or may be affected by the enforcement of any of the provisions of these statutes, which plaintiffs allege are invalid, because in contravention of the Constitution of North Carolina.   These statutes do not deprive plaintiffs of any rights, absolute or relative; neither of them has any right, natural or by virtue of his citizenship in North Carolina to hunt, shoot, kill or trap any wild fowl, or to own or operate batteries or other devices for hunting wild fowl on the waters of Currituck Sound, or its tributaries in Currituck County.   No person, whether a resident or nonresident of the State, has a right to fish in the waters or to hunt game on the lands of this State except as such right is conferred upon him by the State.   "The right of fishery, as well as of hunting, rests in the State, and is subject absolutely to such regulations as the General Assembly may prescribe and can be exercised only at such times and by such methods as it may see fit to permit."   *Daniels v. Homer,* 139 N. C., 219.

"The ownership of game is in the people of the State, and the Legislature may withhold or grant to individuals the right to hunt and kill game, or qualify or restrict it, as in its opinion will best subserve the public welfare."   "So well recognized is it that ownership of game and fish is in the State and not in individuals, that the decisions are uniform that a State may confer exclusive right of fishing and hunting upon its citizens and expressly exclude nonresidents, without infringing that provision of the Constitution of the United States (Art. IV, sec. 2) which provides that 'the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States.' "   *S. v. Gallop,* 126 N. C., 979.   The right of the State, in the exercise of its police power, to make the hunting of game, without a license, unlawful, is too well established to be now the subject of controversy.   Nor can the right of the State to require the payment of a fee for such license be questioned.

It is only in the event that plaintiffs, or any one of them, hunt, shoot, kill or trap wild duck, geese, brant or other wild fowl, or act as guide to one so engaged, from shore, marsh, blind, battery or other floating

device, or own or operate a battery or other floating device, used for the hunting of wild fowl, or use a stationary or floating blind for the accommodation of sportsmen, without having first obtained the license required by the statutes, that they or either of them can be affected by the provisions of the statute, which make such acts unlawful. Only those whose conduct is in violation of these statutes may be prosecuted. If either of the plaintiffs shall be charged with a violation of these statutes, and prosecuted therefor in a court of competent jurisdiction, he may plead in defense the invalidity of the statutes upon the same grounds as those alleged in the complaint in this action. If such plea be sustained, he cannot be convicted or punished. His remedy at law is complete. Plaintiffs by this action have invoked the equitable jurisdiction of the Superior Court of Mecklenburg County to determine the validity of this plea, and have thus sought to restrain and enjoin the enforcement of statutes, enacted by the General Assembly, applicable by their very terms only to acts which may be done in Currituck County. They neither allege nor show that the enforcement of these statutes will result in an irrevocable injury to, or a destruction of their property or property rights, or will subject them to oppression or vexa-tious litigation.

In *Advertising Co. v. Asheville,* 189 N. C., 737, *Justice Adams,* in the opinion for the Court, says: "In a number of our decisions it has been held that as a general rule an injunction will not be granted to prevent the enforcement of an invalid or unlawful municipal ordinance. *Cohen v. Comrs.,* 77 N. C., 2; *Wardens v. Washington,* 109 N. C., 21; *Scott v. Smith,* 121 N. C., 94; *Paul v. Washington,* 134 N. C., 363; *Hargett v. Bell, ibid.,* 394; *S. v. R. R.,* 145 N. C., 495, 521; *Thompson v. Lumberton,* 182 N. C., 260; *Turner v. New Bern,* 187 N. C., 541. But this general rule is not universal in its application; on the contrary, it is subject to well recognized exceptions. If it appear that an ordinance is unlawful or in conflict with the organic law and that an injunction against its enforcement is necessary for the protection of property rights or the rights of persons otherwise irremediable, the writ is avail-able in the exercise of the equitable powers of the court. See the con-curring opinion of *Mr. Justice Hoke* in *Turner v. New Bern, supra,* and the concurring opinion of *Mr. Justice Brown* in *R. R. v. Goldsboro,* 155 N. C., 365. The principle is clearly and forcefully enunciated in recent opinions of the Supreme Court of the United States. In addi-tion to the authorities cited by *Justice Adams,* see *New Jersey v. Sar-gent,* decided 4 January, 1925, and reported in 70 L. Ed., 177.

The validity of a statute enacted by the General Assembly of North Carolina, declaring certain acts therein defined to be unlawful, and imposing punishment therefor, as crimes which do not affect property

or property rights, and which do not expose to oppression or vexatious litigation one who denies the power of the General Assembly, under the Constitution of the State to enact such statute, in the event that he shall violate its provisions, may not be determined in an action to restrain and enjoin a public officer who is required by the statute to enforce it. The invalidity of a statute, upon the ground that it is in violation of the Constitution of the State, is a good defense upon a prosecution in the courts for a violation of its provisions. Upon such prosecution his plea may be heard; its validity will then be determined by the courts in the exercise of their jurisdiction to see that no person is "taken, imprisoned, or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property, but by the law of the land."

We are precluded, upon this appeal, from considering or deciding whether or not the statutes are void for the reasons assigned by plaintiffs. The order restraining and enjoining defendants from acting as the Game Commission of Currituck County, and from enforcing the game laws in said county as they are required to do by the statutes, is erroneous. It must be reversed. This action cannot be maintained. It is

Dismissed.

CLARKSON, J., concurring: I concur in the main opinion *on the sole ground* that the validity of a statute enacted by the General Assembly, declaring certain acts therein defined to be unlawful and imposing punishment therefor, as crimes, that no injunction or equitable proceeding will lie. The State, or a State agency, county or municipality cannot be enjoined from executing its criminal laws. Remedy is never given in equity when it can be obtained by law. To have presented to this Court the constitutionality of the Currituck County Game Law, it must appear that the party who violated the provision of the law was duly charged with the crime, convicted and appeal taken to this Court. *Cohen v. Comrs.,* 77 N. C., 2; *Busbee v. Lewis,* 85 N. C., 332; *Wardens v. Washington,* 109 N. C., 21; *Scott v. Smith,* 121 N. C., 94; *Paul v. Washington,* 134 N. C., 363; *Hargett v. Bell,* 134 N. C., 395; *S. v. R. R.,* 145 N. C., 521; *Thompson v. Lumberton,* 182 N. C., 260; *Turner v. New Bern,* 187 N. C., 548.

For the reasons given, the constitutionality of the Currituck County Game Law is not passed upon in the present opinion.