STATE v. R. F. BARKLEY.

(Filed 22 September, 1926.)

1. **Game—Ownership.**

   The ownership of animals *feræ naturæ,* or game, is in the people of the State at large, and not confined to that of the county in which they be found at any time.

2. **Same—Counties—License Tax—Constitutional Law—Discrimination.**

   While the Legislature may enact valid laws for the protection of game and impose a license for hunting it to be paid to the game warden of the county, it may not, without some substantial basis, impose an increased license tax upon residents of other counties of the State than the tax imposed upon the residents of the county where the game 'is to be found, such being a discrimination inhibited by Art. I, sec. 7, of the State Constitution.

3. **Statutes—Constitutional Law—Invalid in Part—Legislative Intent—Constitutional in Part.**

   . Where a statute imposes a license tax for hunting game upon the residents of the county, and a larger tax is imposed upon the residents of other counties thereof, the legislative intent will not be construed to permit the residents beyond the county boundaries to hunt the game therein without the payment of any tax, and they are required to pay the same tax imposed on the residents of the county.

APPEAL by the State from a judgment for the defendant, rendered on a special verdict by *Bryson, J.,* at April Term, 1926, of CABARRUS.

Criminal prosecution tried upon a warrant charging that the defendant, a resident of Mecklenburg County, and being over sixteen years of age, did on or about 30 December, 1925, hunt with dog and gun on the lands of B. W. Means in Cabarrus County, contrary to the statute in such cases made and provided, etc.

It was shown on the trial, and the special verdict establishes, among other things, that the defendant, R. F. Barkley, was, on 30 December, 1925, a resident of Mecklenburg County, above the age of sixteen years; that on said date he hunted with dog and gun on the lands of B. W. Means, situate in Cabarrus County, with the consent of the said Means, but without having obtained a license from the game warden of Cabarrus County, or any other person having authority to issue the same, as required by chapter 573, Public-Local Laws 1925.

Upon the facts found and declared by the jury, a special verdict of not guilty was rendered under appropriate instructions from the court, and from the judgment entered thereon the State appeals, assigning error.   C. S., 4649.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*H. C. Jones and C. A. Cochran for defendant.*

STACY, C. J.  The pertinent provisions of the statute, section 7, subsections (a) and (b), ch. 573, Public-Local Laws 1925, under which the defendant is indicted, are as follows:

"(a) All persons who shall hunt with a gun, and who shall have been a resident of Cabarrus County for three months, and who shall be sixteen years of age or over, shall, before entering any field for the purposes of hunting any wild bird or animal, be required to procure a hunter's license from the game warden or other officer or person authorized to issue said license, and for said license the person procuring same shall pay to the person issuing such license the sum of one dollar, and the license so issued shall be good for one year from the first day of May of the year in which it is issued.

"(b) All persons living in another county, and who shall be sixteen years of age or over, shall pay the sum of three dollars for a hunter's license in Cabarrus County, which shall be good for one year from the first day of May of the year in which it is issued."

The defendant contends that subsection "b" is alone applicable to him, as he is a resident of Mecklenburg County and that said subsection is void because it arbitrarily discriminates against all hunters of the

State, who live outside of Cabarrus County, by requiring them to pay a license tax of $3.00 for the privilege of hunting in said county, while residents of Cabarrus County of three months standing or longer are required to pay a license tax of only $1.00 for the same privilege.

In this jurisdiction, as in many others, it is held that the ownership of animals *feræ naturæ,* or game, is in the people of the State, or in the State for the use and benefit of all the people, and that the right to hunt and kill such game may be granted, withheld or restricted by the Legislature in such manner and on such terms, as in its judgment, will best subserve the general welfare, subject only to the provisions of the organic law against arbitrary discrimination among the citizens of the State and denial of the equal protection of the laws. *S. v. Gallop,* 126 N. C., 979; *Moore v. Bell,* 191 N. C., 305.

True, it is recognized that, to a limited extent, the owner of land ought to be, and is, under certain restrictions, permitted to take game from his own premises, but this right is entirely subordinate to the right of the law-making body in the exercise of the police power to legislate for the protection of the game of the State. *Council v. Sanderlin,* 183 N. C., 253.

In the exercise of this regulatory power, it has been held that the Legislature may go so far as to confer the exclusive right of fishing, fowling or hunting, upon the citizens of the State, and expressly exclude nonresidents, without violating the constitutional provisions above mentioned. *S. v. Gallop, supra; S. v. House,* 65 N. C., 315; 12 C. J., 1118.

But it is also held that the Legislature may not grant to the inhabitants of the different counties of the State the right to take game within their respective counties to the exclusion of or upon more favorable terms than other residents of the State, without some reasonable basis for the distinction, for this would amount to an arbitrary discrimination against citizens of the State who live outside of a given county and in favor of those who live within it. 27 C. J., 947; *Lewis v. State,* 161 S. W. (Ark.), 154; *Harper v. Galloway,* 51 So. (Fla.); 226, 27 L. R. A. (N. S.), 794, 19 Ann. Cas., 235; *S. v. Hill,* 53 So. (Miss.), 441, 31 L. R. A. (N. S.), 490; *S. v. Bryan,* 99 So. (Fla.), 327; *S. v. Philips,* 70 So. (Fla.), 367.

No reasonable basis appearing for the difference of $2.00 in the license tax required of citizens of the State residing outside of Cabarrus County and those residing in said county, we must hold, in keeping with all the authorities on the subject, that the discrimination made by the statute, now under consideration, against hunters not living in Cabarrus County, offends against Art. I, sec. 7, of the State Constitution, which is as follows: "No man or set of men are entitled to ex-

clusive or separate emoluments or privileges from the community but in consideration of public services."

This, however, need not invalidate the section in its entirety, but only to the extent of the discrimination. *S. v. Mitchell,* 97 Me., 66, 53 Atl., 887, 94 A. S. R., 481. The terms of the Constitution are to be read into the statute, and the law is to be upheld if possible. The law-making body is presumed to have intended a valid, constitutional enactment, and only the unlawful part is to be disregarded, if this can be done without affecting the valid legislative intent. *Harper v. Galloway, supra.* "Where a part of a statute is unconstitutional, but the remainder is valid, the parts will be separated, if possible, and that which is constitutional will be sustained." *Keith v. Lockhart,* 171 N. C., 451. Not only is this the general rule of statutory construction, but section 20 of the act in question expressly provides: "If any clause, sentence, paragraph or other part of this act shall for any reason be adjudged by a court of competent jurisdiction to be invalid, it shall in no way affect or impair the remainder of said act."

We could not hold subsection "b" void *in toto* and leave subsection "a" untouched, without working an unlawful discrimination against the residents of Cabarrus County. The Legislature clearly did not intend such a result. But by applying the constitutional rule of equality, which is to be read into the statute, the discrimination may be removed and the minimum license tax of $1.00 left to apply uniformly to all the residents of the State. This, we think, accords with the legislative intent as expressed in section 20 of the act. Thus the defendant should have applied for a hunter's license and tendered therefor the lawful tax of $1.00, as required by the valid provisions of the statute, before going into Cabarrus County and hunting with dog and gun. He is charged with hunting with dog and gun in Cabarrus County without obtaining a license from the game warden, or any other person having authority to issue the same; and this is made a misdemeanor by the Act of Assembly. Under the findings of the jury, we are of opinion that an adverse verdict should have been rendered against him.

To hold that the defendant, a resident of Mecklenburg County, above the age of sixteen years, is not required by the valid provisions of the statute, to obtain any license at all for the privilege of hunting in Cabarrus County would obviously do violence to the legislative intent, and necessarily render other provisions of the act equally unconstitutional. Such a construction is to be avoided if possible, and we think it can be.

We are not called upon to say whether subsection "a" unlawfully discriminates against *bona fide* residents of Cabarrus County of less

than three months standing, as the question is not presented by the appeal, nor is the defendant in position to raise the point, he not being such a resident of said county.

Let the cause be remanded, to the end that a verdict of guilty may be entered on the special findings of the jury. *S. v. Moore*, 29 N. C., 228.

Reversed.