## COMMISSIONERS OF BURKE COUNTY v. CATAWBA LUMBER COMPANY.

*Floatable Stream— What is Not—Injunction—Right of County Commissioners to Sue—Damages to Bridges.*

1. While it is not necessary, in order to establish an easement in a river for floatage, to show that the stream can be used continuously during the whole year for that purpose, it must nevertheless appear that business men may calculate with tolerable regularity as to the seasons the water will rise to and remain at such a height as will enable them to make it profitable to use it as a highway for transporting logs to market or mills lower down.

2. Temporary rise of waters, passing quickly down, is not sufficient to make a stream floatable, not even if the freshet should continue for two or three days and be reasonably expected every year.

3. The easement for floatage, when it exists, must be exercised with due care for the avoidance of injury to the interests of the riparian proprietors and the owners of the soil beneath the bed of the stream.

4. *Semble*, that when a stream is floatable, so as to give to the public an easement for transportation, it would be the duty of the County Commissioners to so construct bridges on the highways leading across the stream as to permit the use of the stream for the purpose of floatage.

5. The County Commissioners, under the general powers granted by section 704 of *The Code*, may bring an action for an injunction to restrain the use of a non-floatable stream for floatage of logs causing damage to a county bridge over such stream.

5. For the recovery of damages for injury to county bridges, a remedy is given by section 2055 of *The Code*.

CIVIL ACTION, tried before *Allen, J.,* at Fall Term, 1894, of BURKE Superior Court.

The action was to recover damages against defendant corporation for injuries to certain bridges across the Catawba river, known as the Rocky Ford and Lovelady bridges, and to a bridge across Johns river, known as Johns river bridge,

and to restrain the defendant from floating logs down said river.

A jury trial was waived, and his Honor found (among others) the following facts:

" 7. That the method adopted by the defendant company is, after cutting the trees into proper lengths, to bank them in great numbers along the streams, the lower logs being in the stream, and the whole being so placed that a rise in the river will cause the lower strata of logs to float, and then the other logs will roll into the stream and be carried down by the current.

" That no one is left in charge of said banks of logs, and upon a rise in the waters the logs float down the streams without direction or guidance.

" 8. That the Catawba river is a wide, shallow stream, and at Lovelady and Rocky Ford bridges is from 200 to 300 feet wide, and has an average depth, at ordinary water, at those points of about two feet, and is in the deepest parts at those points about four feet deep. That there are shoals in said river, averaging perhaps one each half mile, from twenty to one hundred yards wide, and upon which, at ordinary water, there is a depth of water from eight to twelve inches. That the water in said river is higher in the winter than in the summer, and is dependent for its increase upon the rainfall; that ordinarily the rainfall is sufficient to increase the water eight or ten times each year in sufficient quantity to float logs down said river without obstruction from the shoals, but at such times the rainfall is considerable and sufficient to raise the water in the said river from two to four feet. That the rainfall causing this increase in the water of said river usually occurs in the fall, winter or spring, but occurs at irregular intervals, and the rises in said river, while usually occurring, do not occur at any regular period. That in addition to these rises in the water of the Catawba river there are usually rises once or twice a year of from five to

fifteen feet, occasioned by very heavy rainfall, but these rises occur at irregular periods.

" 9. That the Johns river is not as wide as the Catawba river, is more crooked, and has a less volume of water. At Johns river bridge it is about 100 feet wide and about two feet deep; that there are shoals in said river about one-fourth of a mile apart from 20 to 100 yards wide, upon which, at ordinary water there is a depth of water from eight to ten inches. That the water in said river is higher in the winter than in the summer, and is dependent for its increase upon the rainfall; that ordinarily the rainfall is sufficient to increase the water eight or ten times each year in sufficient quantity to float logs down said river without obstruction from the shoals. That this increase in the waters of Johns river is similar in all respects to the increase in the waters of Catawba river, and occasioned in the same way.

" 10. That a rise in the waters of Catawba and Johns rivers usually subsides in twenty-four or forty-eight hours.

" 11. That between these shoals on Catawba and Johns rivers logs in large quantities may be floated at ordinary water without coming in contact with the soil.

" 12. That at ordinary water logs may be carried down Catawba and Johns rivers. That in order to do so it is necessary to have a number of hands, and when a shoal is reached the logs nearest the banks on either side are used as wings by turning the ends of the logs up the stream to either bank, thereby increasing the volume of water in the deepest part of the shoal, and then passing the logs through this deepest part over the shoal. That in using this method at ordinary water it is sometimes necessary to deepen the channel over the shoals by removing rocks and soil, and sometimes necessary to roll numbers of logs across the shoals.

" 13. That the bridges known as the Rocky Ford and Johns river bridges are public bridges within the county of Burke, and a part of a public highway, and in the possession and under the control of the plaintiff.

" 14. That the Lovelady bridge is a public bridge and is a part of a public highway.  That half of said bridge is in the county of Burke, and in the possession and under the control of the plaintiff.

" 15. That all of said bridges are built about fifteen feet below high water-mark, from two to three feet above ordinary water, without railings, upon piers in the water, the space between said piers being from twenty-five to thirty feet.  That from each of said piers pieces of timber extend up the river from twenty to thirty feet, the end furthest from the bridge being bolted to the bottom of the river.  That there are no draws in any of said bridges.  That said bridges were built and under the control of the plaintiff prior to the time the defendant established its plant below Lovelady bridge and prior to the time they began operation on the Catawba and Johns rivers.  That when the waters of Catawba and Johns rivers rise and logs are floated down these streams, the said bridges, as now constructed, prevent the passage of the logs, and that a necessary consequence of floating logs upon a rise of the waters is to destroy the same.

" 16. That the banks along the streams where said bridges are built, and from thirty to forty feet from the bridges, are from fifteen to twenty feet high, and it is practicable to raise said bridges to a sufficient height to allow the free passage of logs, but to do so would cost from $1,000 to $1,500, and the county of Burke has not in its treasury money which can be appropriated to that purpose.

" 17. That said bridges have been injured from time to time, before and since the commencement of this action, by logs belonging to defendant being driven against them by the current upon a rise of the waters in said rivers.  Said logs being driven against said bridges under the conditions set out in finding No. 7.

" 18. That the defendant has, from time to time, employed

115—38

different persons to watch, guard and protect said bridges, and said persons have done all that could be done to prevent injury to said bridges, but it is impossible to control the large number of logs floating down said streams upon a rise of the waters, from the bank of logs described in finding No. 7, and to prevent injury to said bridges as now constructed.

" 19. That the injury to said bridges before this action began, amounted to $152.39, and since this action was begun, to $467.82.

" 20. That the evidence as to injury to defendants by reason of the restraining order issued herein is unsatisfactory and not convincing, and the Court cannot make a finding thereon, being satisfied that the estimates of injury in the evidence are excessive."

Upon these facts his Honor held " that said rivers are floatable ; that, upon the whole case, the plaintiff is not entitled to the relief prayed for, and that the restraining order be dissolved, and that defendants recover their costs, and judgment is rendered accordingly."

The plaintiff appealed and excepted to the rulings of the Court as follows :

" To the ruling of the Court that, upon the facts found, the Catawba river and Johns river are floatable streams.

" To the ruling of the Court that, upon the whole case, and upon the facts found, the plaintiff is not entitled to the relief prayed in the complaint (to the recovery of damages, or to an injunction).

" To the ruling of the Court that plaintiff is not entitled to the recovery of damages.

" To the ruling of the Court that, upon the facts found in paragraphs seven (7) and seventeen (17) of the report, the plaintiff is not entitled to an injunction to restrain the defendants from floating logs on said streams in such a way as to damage said bridges.

" To the ruling of the Court that, upon the facts found in 7, 17 and 18 of said report, the plaintiffs were not entitled to either damages or to an injunction."

There was an additional finding by his Honor (he having reserved the right to file any that might be suggested and deemed necessary), to the effect that the bridges referred to are the property of the plaintiff, and that the cost of erecting and repairing the same devolves upon the county of Burke. The Rocky Ford bridge has been used and maintained as a public bridge by the plaintiffs about thirty years; Johns River bridge, since 1878, and Lovelady since 1870.

*Messrs. S. J. Ervin* and *J. T. Perkins,* for plaintiffs (appellants).

*Messrs. Charles A. Moore* and *I. T. Avery,* for defendants.

MacRae, J.: In *Gwaltney* v. *Timber Co.,* decided at this term, and previously considered in 111 N. C., 547, we have carefully examined the subject involved in this controversy, and approved the issue framed by his Honor establishing that which is necessary to create an easement for the purposes of floatage in the non-navigable streams of this State. We repeat: "It is not necessary, in order to establish the easement in a river, to show that it is susceptible of use continuously during the whole year for the purpose of floatage, but it is sufficient if it appear that business men may calculate with tolerable regularity as to the seasons the water will rise to and remain at such a height as will enable them to make it profitable to use it as a highway for transporting logs to market or to mills lower down." We approved the instruction : " If the freshet should arise, from natural rainfall, for a sufficient period to make it useful to the public, it would be considered a floatable stream. Temporary rise, passing quickly down, is not sufficient to make a stream floatable, and would not be sufficient if the freshet should con-

tinue up for even two or three days and be reasonably expected every year." To apply these principles to the present case: His Honor has carefully found the facts as to the manner of floating logs down these streams on ordinary water, by a kind of improvised slack-water navigation, and by rolling the logs over the shoals. He has also found the manner adopted by the defendant of banking large numbers of logs along the streams that they may be carried down at the will of the current, in times of freshet, and without further assistance or direction, and that these rivers are wide and shallow streams, with frequent shoals, and it fully appears that they are useless for floatage purposes in ordinary water. While the water is higher in the winter than in the summer, the increase in the depth of the streams occasioned by the rainfall, and sufficient to float logs, occurs eight or ten times each year, and the water subsides in twenty-four or forty-eight hours. We do not concur in the conclusion of law reached by his Honor on the facts found. It is manifest that this method of transportation is confined to the occasions of rapid rise and fall of the streams, advantage of which must be taken by previous preparation for freshets, and without power to control the timber when carried off by the current.

We are of the opinion that this floatability on the occasional and tolerably regular rises of the river, must depend on more than a rapid freshet, subsiding as rapidly. These streams " are entirely the subject of private ownership, and are generally included in the grants of the soil, and the owners may make what use of them they think proper, whether it be for fishing, milling, or other lawful trade or business. The only restriction upon this right of ownership arises, *ex necessitate,* from the nature of running-water, and it is that the owner shall so use the water as not to interfere with the similar rights of other proprietors above or below him, on the same stream." *State* v. *Glenn,* 7 Jones, 321.

Even if the streams were of such a character as to give

the public an easement for floatage upon them, we should not hold that this right could be exercised without due care for the avoidance of injury to the interests of the riparian proprietors and the owners of the soil beneath the bed of the stream.

And on the other hand, it would seem that if these were floatable streams in which the public had an easement for transportation, it would be the duty of the County Commissioners, certainly in the absence of express authority to the contrary, to so construct the bridges on their highways as to permit the use of the rivers for the purposes of floatage.

Being of the opinion that, upon the facts found, Catawba and Johns rivers, in Burke County, at the points where the said bridges are situate, are not subject to an easement in the public for the floatage of logs, we declare that there is error in the dissolution of the restraining order. The injunction should have been made perpetual. We think, also, that under the general powers granted by section 704 of *The Code* to the County Commissioners, " to sue and be sued in the name of the Board of Commissioners," they had the power to bring this action for an injunction. For the recovery of damages for injury to the bridges, the statute, section 2055 of *The Code*, provides the remedy.

If the public interest shall at any time require the opening of these streams for floatage, and the raising of the county bridges, the matter is entirely in the hands of the Legislature, subject to prudent constitutional restrictions as to vested rights.                                      Reversed.

AVERY, J. (concurring): If it be true, as appeared from the testimony offered, and as was found by the Judge below, that neither the Catawba river nor Johns river afford sufficient water to float logs over the shoals that abound in the beds of both, except when they rise suddenly eight or ten times during every year, and continue at a sufficient height

to carry the logs off for a period of from twenty-four to forty-eight hours, then neither of the rivers would fall within the definition of a floatable highway heretofore given by this Court. *Gwaltney* v. *Lumber Co.*, 111 N. C., 547. The record in the case operates as an estoppel only upon the parties to the action, or those who who are in privity with them and are bound by the decree. As between the defendant company and every riparian proprietor who owns any portion of the bed of the Catawba or Johns rivers, it is still an open question whether the company can use the water passing over his land as a public highway, just as in *Gwaltney* v. *Lumber Company* the decree precludes the defendant from claiming the right to use so much of the bed of the French Broad river between Asheville and the State line as is owned by Gwaltney, and no more. The perpetual injunction must, therefore, be so drawn as to restrain the defendants from using the portion of said streams where the county bridges are situated, for the purpose of floating, and not any part of either river above or below such bridges. In Gwaltney's case it seemed to have been admitted that so much of the French Broad river as was above the city of Asheville was a floatable stream. *Non constat* in our case, but that for long distances above the county bridges both the Catawba and Johns rivers may not be hereafter found to be floatable. Nothing, therefore, is settled by this judgment except that the defendants are to be forever enjoined from endangering the stability of the bridges mentioned in the pleadings by attempting to float logs over or under them. Whether it was erroneous, in the first instance, to hold that the rights of the public to use a stream as a highway should be passed upon, whenever a riparian proprietor should see fit to sue one so using it for trespass, is, if our former adjudications are to remain undisturbed, no longer a debatable question. The consequence may be that one mill-owner may, by a succession of findings by Court or jury, establish his individual right to use a stream as a public highway, notwithstanding the objec-

COMMISSIONERS *v.* LUMBER COMPANY.

tions of riparian owners or county authorities along the whole distance, while another less fortunate litigant may establish by verdicts the right of the public to an easement in all but a single tract extending over the bed of the stream, and be driven to buy the right-of-way over that, or discontinue his business. Right or wrong, the law has thus been written, and we must adhere to it or modify it. In assenting to the opinion of the Court, I wish to exclude the inference that the right of any particular riparian proprietor along the Catawba or Johns river to the use of the bed of the stream in his front has been adjudicated, or that the defendant company is precluded from the right to use the water flowing over his land for transporting his logs. It has been long settled that a State may, by statute, regulate the manner of floating logs, even on larger navigable streams passing through its territory, without interfering with interstate commerce. In the exercise of this authority, Legislatures have enacted laws requiring that logs should be floated only in rafts. In the face of conflicting verdicts between different parties, it may be difficult to determine whether the public have an easement in any stream for the purpose of transportation. The power must reside somewhere to settle the question whether a watercourse is a floatable stream. We have seen that the suits between individuals do not determine the rights of the public. If the Legislature should enact a law providing that a company should have the privilege of floating logs along so much of a certain river as was not already subject to an easement as a floatable stream, would the Courts sanction the awarding of damages to alternate proprietors along its banks, because one jury declared it not a highway and assessed damages in the manner provided by law, while another found it succeptible of use as a channel of commerce?

While conceding that the conclusions in this case are in harmony with the opinions in the Gwaltney cases, I deem it

proper to point out the quicksands towards which, it seems to me, we are tending, if no way can be devised of ascertaining the rights of the public in floatable streams, except by endless litigation with unsatisfactory and conflicting judgments.