NEWMAN ET AL. v. WATKINS ET AL., BOARD OF COUNTY COMMIS-
SIONERS, AND ROYSTER ET AL., BOARD OF ELECTIONS OF VANCE
COUNTY.

(Filed 1 November, 1935.)

1. **Statutes A e—**

The constitutionality of a statute may not be tested by injunctive pro-
ceedings unless the party seeking the injunctive relief alleges and shows
that he will suffer irreparable damage from the enforcement of the
statute.

2. **Same: Injunctions B e—Plaintiffs held not entitled to enjoin election
to determine whether repeal statute should apply to the county.**

Plaintiffs sought to enjoin the holding of an election under ch. 493,
Public Laws of 1935, to determine whether the county should be subject
to a statute which provided for the repeal of the general law relating to
intoxicating liquor and for the sale of intoxicating liquor under county
supervision and control, and provided that sale otherwise than as per-
mitted by the statute should be a misdemeanor. Plaintiffs, residents and
taxpayers of the county and of other counties of the State, contended that
the statute under which the proposed election was to be held was uncon-
stitutional. *Held:* Plaintiffs were not entitled to the injunctive relief
sought, since if taxes should be levied to meet the expense of putting the
statute into operation, plaintiffs have an adequate remedy at law, and
since plaintiffs have an adequate remedy against alleged unconstitutional
discriminations of the statute by violating the statute and pleading its
unconstitutionality as a defense, or by prosecuting under C. S., 395 (2),
the persons doing the acts allowed by the statute to which they object,
and plaintiffs not being entitled to injunctive relief in the absence of a
showing of direct injury or an invasion of their property rights resulting
in irreparable injury. *Griffith v. Board of Education,* 183 N. C., 408, cited
and distinguished in that the General Assembly has authorized the holding
of an election as contemplated in the present case, while in the *Griffith
case, supra,* the proposed election was without authorization.

CLARKSON, J., dissenting.

APPEAL from *Devin, J.,* at June Term, 1935, of VANCE. Affirmed.

This is an equitable action, wherein the plaintiffs sought to enjoin the
defendants from holding the election and putting into effect the other
provisions of chapter 493 of the Public Laws of 1935, upon the ground
that said statute is unconstitutional and void.

The plaintiffs base their principal contentions upon their allegations
that some of them are residents and taxpayers in Vance County and that
others of them are residents and taxpayers in other counties in the State,
and that they are informed and believe that said statute is unconstitu-
tional for that its provision for financing the operation of the statute
from the general county funds permits the incurring of debts and the
pledging of the faith of the county without a bill for that purpose having

been passed on three several readings on three different days, and for that the statute is a local, special act relating to health, abatement of nuisances, and quality of liquors for human consumption, and regulating labor and trade, and the said statute was enacted by a partial repeal of the general law, in violation of Art. II, sections 14 and 29, respectively, of the Constitution of North Carolina; and for that said statute grants privileges and immunities to some which it withholds from others, and thereby denies equal protection of the law to those within the jurisdiction of the State, in violation of the 14th Amendment to the Constitution of the United States.

The judge of the Superior Court denied the injunctive relief sought, to which ruling the plaintiffs excepted and appealed to the Supreme Court, assigning errors.

*J. H. Bridgers* for appellants.
*George C. Green, Perry & Kittrell, Julius Banzet, Stuart Smith, and Frank Banzet* for appellees.

SCHENCK, J. A perusal of the statute which the plaintiffs seek to have declared unconstitutional discloses that it provides for an election to be held to determine whether a statute which carries two major provisions shall become the law in Vance County, these provisions being, first, to repeal the general law prohibiting traffic in alcoholic beverages as it relates to said county and to establish a method for its sale therein under county supervision and control, and, second, to make the traffic in alcoholic beverages in said county, otherwise than provided in said statute, a misdemeanor, and prescribing punishment therefor.

The plaintiffs nowhere allege that they will suffer any direct injury or that there will be any invasion of their property rights if the election is held, or if the statute is put into effect as a result of the election, and it is well settled in this jurisdiction that allegations to such effect must be made by those who would seek to have the courts declare an act of the Legislature in contravention of the organic law. Only those who can allege and prove that there will be irreparable damage to them by the enforcement of a statute are privileged to ask the judicial department to exercise its high prerogative of setting at naught a solemn act of its coördinate legislative department. *Moore v. Bell,* 191 N. C., 305; *Wood v. Braswell,* 192 N. C., 588; *Yarborough v. N. C. Park Commission,* 196 N. C., 284. "Courts never pass upon the constitutionality of statutes, except in cases wherein the party raising the question alleges that he is deprived of some right guaranteed by the Constitution, or some burden is imposed upon him in violation of its protective provisions." *St. George v. Hardie,* 147 N. C., 88 (97). "The party who invokes the

power (of a court to declare an act of the Legislature unconstitutional) must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." Willoughby on the Constitution of the United States (2d Ed.), sec. 13, p. 20, quoting *Massachusetts v. Mellon,* 202 U. S., 447.

The allegations that the plaintiffs are residents and taxpayers in North Carolina, some in Vance and some in other counties, and that the putting into operation of the provisions of the statute may be financed from the general funds of Vance County do not amount to an allegation of direct injury or of an invasion of property rights of the plaintiffs, since, if this expense is to be met from the general funds already collected, the plaintiffs will not be called upon to pay taxes for this purpose, and if such expense is to be met from funds yet to be raised by taxation, which is not yet apparent, the plaintiffs have their remedy at law.

The allegations of discriminations cannot avail the plaintiffs, since they have an adequate remedy at law for any and all alleged discriminatory features of the statute. Should the plaintiffs desire to do those things made unlawful by the terms of the statute they can do so, and if indicted for so doing they may then plead the invalidity of the statute, and if their contention as to its unconstitutionality is well founded, the indictment will fail. *Connor, J.,* for the Court, in *Moore v. Bell, supra,* writes: "The validity of a statute enacted by the General Assembly of North Carolina, declaring certain acts therein defined to be unlawful, and imposing punishment therefor, as crimes which do not affect property or property rights, and which do not expose to oppression or vexatious litigation one who denies the power of the General Assembly, under the Constitution of the State to enact such statute, in the event that he shall violate its provisions, may not be determined in an action to restrain and enjoin a public officer who is required by the statute to enforce it. The invalidity of a statute, upon the ground that it is in violation of the Constitution of the State, is a good defense upon a prosecution in the courts for a violation of its provisions. Upon such prosecution his plea may be heard; its validity will then be determined by the courts in the exercise of their jurisdiction to see that no person is 'taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land.'"

If the plaintiffs are aggrieved by the acts of others and desire to prevent them from doing those things which the statute permits, but which were prohibited under the former law which the statute repeals, they

have an adequate remedy at law by having indicted and prosecuted those persons doing such things, and if the later statute is unconstitutional it will not avail as a defense. Provision for such prosecution by the State, at the instance of an individual, to prevent an apprehended crime against his person or property is contemplated by Consolidated Statutes, sec. 395 (2), and an adequate remedy at law is thereby furnished.

In speaking to the question as to the exercise by this Court of the authority vested in it to declare acts of the Legislature void when they are in conflict with the Constitution, *Stacy, C. J.,* in a concurring opinion in *Wood v. Braswell, supra,* says: "Such authority is inherent in the judicial power and it is obligatory on the courts to declare the law in all cases, when properly presented. But it is only in cases calling for the exercise of judicial power that the courts may render harmless invalid acts of the Legislature; hence, for this reason, they never anticipate questions of constitutional law in advance of the necessity of deciding them; nor do they venture advisory opinions on constitutional questions." See, also, *Person v. Doughton,* 186 N. C., 723 (725), and cases there cited.

This case is not like *Griffith v. Board of Education,* 183 N. C., 408, where it was said that  ". . . an injunction will issue to restrain the holding of an election where there is no authority for calling it, and where the holding of such an election would result in a waste of public funds," cited and relied upon by plaintiffs; for here the General Assembly has authorized the holding of the election to ascertain the sense of the people upon a question of public policy, and thus to determine whether the act shall become operative in the territory affected.

The whole case resolves itself to this: The plaintiffs sought in a court of equity to restrain an election. It was freely conceded upon the argument that unless the statute in question is unconstitutional, the plaintiffs were not entitled to the relief sought. It must likewise be conceded, we think, that unless irreparable injury would result to the plaintiffs from the mere holding of the election to determine whether the statute shall become operative, their remedy is not presently by injunction.

We hold, in the absence of any allegation or finding of facts that the plaintiffs will be irreparably damaged or suffer any invasion of their property rights by a compliance with the statute, that the question of the constitutionality of chapter 493 of the Public Laws of 1935 was not properly before the court, and that his Honor correctly denied the injunctive relief prayed for in the complaint.

Affirmed.

CLARKSON, J., dissenting: I think the act unconstitutional as impinging four articles of the Constitution of North Carolina, and void for uncertainty, and injunctive relief should have been granted.

Article I, sec. 7, is as follows: "No man or set of men are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services."

Article I, sec. 31: "Perpetuities and monopolies are contrary to the genius of a free state and ought not to be allowed."

The above are fundamental democratic principles of "equal rights and opportunities to all, special privileges to none." The caption of the act in controversy, chapter 493, Public Laws 1935, is as follows: "An act to exempt Pasquotank County from the provisions of Article 8 of chapter 66, Volume 3, of the Consolidated Statutes, known as the Turlington Act, *and to set up an Alcoholic Control Board for the county of Pasquotank.*" (Italics mine.) Section 1: "That the provisions of article eight of chapter sixty-six, volume three, of the Consolidated Statutes of North Carolina, known as the Turlington Act, shall not apply to Pasquotank County, Carteret County, Craven County, Onslow County, Pitt County, Martin County, Beaufort County, Halifax County, Franklin County, Wilson County, Edgecombe County, Warren County, Vance County, Lenoir County, Rockingham County, Nash County, and Greene County." Then near the end of the act, between sections 26 and 27 (the ratification clause), is the following: "Sec. A. Should a majority of the qualified voters at the election herein provided for vote in favor of the sale of liquor under the provisions of this act, the board herein named for the enforcement of this act and to provide for the sale of liquor shall establish and maintain a store for the sale of liquor under the provisions of this act in Southern Pines, in the county of Moore, when a petition requesting such establishment shall be presented to such board signed by a majority of the qualified voters of McNeill's Township in Moore County; and shall likewise establish and maintain a store for the sale of liquor under the provisions of this act in Pinehurst, in Moore County, when a petition requesting such establishment shall be presented to such board signed by a majority of the qualified voters of Mineral Springs Township in Moore County. The finding of such board that such petition in either case is signed by a majority of such qualified voters shall be conclusive of such fact."

The caption of the act is the Alcoholic Control Board for the County of Pasquotank; this special privilege to Southern Pines and Pinehurst was to be presented "to such board"—the Pasquotank County Board—but on the argument it was stated that Wilson County Alcoholic Control Board is running one and arranging to run the other of these two stores—thus sending liquor from Wilson County, some 120 miles, over territory subject to the Turlington Act, to Southern Pines (Pinehurst now operating a liquor store), without any authority under the act. The Alcoholic Control Board of Wilson County is selling and controlling

the liquor stores in these towns. Is this thing possible where law and order should be respected?

The act confers special privileges on citizens of Vance County that it denies to those of others, by providing different punishment for the manufacture of liquor from that in other counties. Sec. 19 provides a fine of $5,000, or imprisonment not exceeding two years, or both. The general law makes the first offense punishable as a misdemeanor and the second offense a felony. A citizen of Vance County, under the assailed act, can manufacture liquor, and under the judgment of a kindly court be imprisoned for a day; whereas, a citizen of Wake or Wayne counties for the second offense must be punished as for a felony.

Sec. 21 makes manufacturing and sale, etc., by clubs punishable by not exceeding $500 fine and not exceeding six months imprisonment, while similar malefactors in same county not operating clubs, etc., are punishable by fine of $5,000 or imprisonment for two years, or both.

Sections 12 and 19: Gives right to sell friends and refuse others. Gives right to sell one more than another. Requires board to purchase and sell on order and authorizes the board to refuse to sell when not on order. Authorizes transport and possession of four quarts of liquor in Vance County, and thereby discriminates against people outside such county, and particularly against the plaintiffs in Wake and Wayne counties in this action. Discriminates against advertisers of liquors in other counties. (Secs. 10 and 12.) Makes possession of still lawful in Vance County, by repeal of the Turlington Act, and unlawful in other counties not in the bill; therefore, grants special privileges to citizens of Vance which it denies to citizens of Wake and Wayne. By repealing the Turlington Act, possession of liquor is not *prima facie* evidence of possession for sale in Vance County while it is in other counties not in the act; and especially the plaintiffs herein, residents of Wake and Wayne counties. Confers special privileges on citizens of Vance County by repeal of search and seizure provisions of Turlington Act, not enjoyed by citizens of other counties. It relieves certain persons from civil liability for act that others would be liable for and prevents redress for definite rights for breaches of contracts or torts. The money goes into the coffers of these counties to the exclusion of all other counties and the State.

The foregoing are only illustrative of the numerous privileges conferred on citizens of Vance County by the attempted repeal of the Turlington Act as to that county.

The people of this State, on 27 May, 1908, voted "Against the manufacture and sale of intoxicating liquor" by a majority of 44,196. On 7 November, 1933, this State, out of a total vote of 415,536, voted 184,572 majority for dry delegates against the repeal of the Eighteenth Amendment. The General Assembly passed the "Turlington Act," Pub-

lic Laws 1923, ch. 1, to carry out the mandate of all the people of the State, it was a general State policy that no liquor should be sold in the State. "Touch not, taste not, handle not for beverage purposes" was the mandate of the people. It is a matter of common knowledge that the platforms of both political parties in the State, one since 1908 and the other for perhaps 20 years, have recognized that the vote of all the people of the State in 1908 was binding on them.

In *Simonton v. Lanier,* 71 N. C., 498, the charter of the Bank of Statesville was given the special privilege to lend money at a higher rate than the general State law. Referring to Article I, secs. 7 and 31, *Bynum, J.,* said (p. 503) : "The wisdom and foresight of our ancestors is nowhere more clearly shown than in providing these fundamental safeguards against partial and class legislation, the insidious and ever working foes of free and equal government."

In *State v. Fowler,* 193 N. C., 290, we find an attempt was made to change this State policy (p. 291) : "The General Assembly at the session of 1925 passed a public-local law applicable to the counties of Transylvania, Jackson, Clay, Graham and Polk. The Public-Local Laws 1925, ch. 114. . . . Sec. 2 : 'That any person or persons who shall be convicted of any of the offenses hereinbefore mentioned (manufacturing, selling or offering for sale, transporting, buying, or having liquors on hand for the purpose of sale, or any other violation of the prohibition law) shall be guilty of a misdemeanor and shall, for the first offense, be fined not less than fifty dollars nor more than one hundred dollars, and for a second or further similar offense shall be imprisoned not less than six months nor more than two years, and shall be required to pay all costs and sums taxed as a reward against such convicted person, in addition to such fine or imprisonment as herein mentioned.' " At p. 292, *Adams, J.,* for the Court, said: "This provision, we think, is a guaranty that every valid enactment of a general law applicable to the whole State shall operate uniformly upon persons and property, giving to all under like circumstances equal protection and security and neither laying burdens nor conferring privileges upon any person that are not laid or conferred upon others under the same circumstances or conditions. 6 R. C. L., 369, sec. 364; 36 Cyc., 992; 12 C. J., 1187, sec. 955; 16 C. J., 1352, sec. 3189; *S. v. Bargus,* 53 A. S. R. (Ohio), 628; *Jones v. R. R.,* 121 A. S. R. (Ill.), 313; Cooley's Const. Lim., 554, *et seq.* . . . This principle, it should be understood, was not designed to interfere and does not interfere with the police power of the State, the object of which is to promote the health, peace, morals, and good order of the people, to increase the industries of the State, to develop its resources, and to add to its wealth and prosperity."

In *Plott v. Ferguson,* 202 N. C., 446 (this was a public-local law applicable to one county, giving certain privileges to certain corpora-

tions), it is said, at page 451: "The passage of laws not of uniform operation, the granting of special privilege, and the like, are ordinarily contrary to our constitutional limitations. Equal protection of the law and the protection of equal laws are fundamental. 'The statute of limitations cannot be suspended in particular cases while allowed to remain in force generally. *Holden v. James,* 11 Mass., 396; *Davison v. Johonnot,* 7 Met., 388. . . . The general exemption laws cannot be verified for particular cases or localities. *Bull v. Conroe,* 13 Wis., 233, 244. The Legislature, when forbidden to grant divorces, cannot pass special acts authorizing the courts to grant divorces in particular cases for causes not recognized in the general law.' *Teft v. Teft,* 3 Mich., 67; *Simonds v. Simonds,* 103. Mass., 572; Cooley, *supra,* note at p. 809. Const. of N. C., Art. II, sec. 10; *Cooke v. Cooke,* 164 N. C., 272. . . . Cooley's Const. Lim., Vol. 1, note under Powers Legislative Department May Exercise, p. 261: 'Gambling cannot be made a crime everywhere except "within the limits or enclosure of a regular race course." *S. v. Walsh,* 136 Mo., 400, 37 S. W., 1112, 35 L. R. A., 231; see, also, *S. v. Elizabeth,* 28 Atl., 51, 23 L. R. A., 525.' "

In *Hendrix v. R. R.,* 202 N. C., 579 (580-1), *Stacy, C. J.,* said: "If this be the correct interpretation of ch. 699, Public-Local Laws 1927, then, so far as litigants plaintiff, residing in the city of High Point or within one mile thereof, are concerned, the original jurisdiction of the Superior Court of Guilford County, with the few exceptions noted, is closed to them, while such jurisdiction is open to all other parties plaintiff. This runs counter to the organic law, whether such legislation be regarded as creating a special privilege or entailing a discrimination. *Plott v. Ferguson, ante,* 446; *S. v. Fowler,* 193 N. C., 290."

In *Edgerton v. Hood, Comr.,* 205 N. C., 816, *Connor, J.,* it is held (syllabus): "Chapter 344, Public-Local Laws of 1933, as amended by chapters 540 and 541, Public Laws of 1933, providing that depositors of certain closed banks might sell their claim for deposits to persons indebted to the banks at the date of their closing, and that the liquidating agents of such banks should accept such purchased claims at their face value in payment of the purchaser's debts to the banks, is held unconstitutional and void, it being in violation of Art. I, sec. 7, which prohibits exclusive and separate emoluments or privileges except for public service, in that the act allows only creditors who were depositors to sell their claims only to debtors of the bank at the date of their closing in discrimination against other debtors and creditors of the banks, and in that it applies only to banks within certain designated counties, and in some instances only to towns and townships in the designated counties, in discrimination against debtors and creditors of closed banks in other sections of the State, and in that it applies only to banks within the

designated areas which had been closed for eighteen months prior to the ratification of the act in discrimination against debtors and creditors of banks in such areas which closed subsequent to the specified time, all of which classifications are unjust and arbitrary." The present act applies to 17 counties and Southern Pines and Pinehurst.

There are general statutes in this State against gambling, bawdy houses, fornication and adultery, etc. Can it be said that the General Assembly, under these sections of the Constitution, could by vote of the people in the above counties allow them to have gambling, bawdy houses, and free love? It is unthinkable. Then why liquor?

In *State v. Norris,* 206 N. C., 191, this Court has said, at pp. 197-8: "This is a government founded on the consent of the governed, a democracy, the best so far devised by the human family. The will of the majority under constitutional limitations, the supreme law of the land. The use of alcohol is recognized as a habit-forming drug. The General Assembly of North Carolina, Public Laws of 1929, ch. 96, passed an act to require in the public schools of the State instruction 'of the effect of alcoholism and narcotism on the human system.' This teaching to have the effect to prevent the use of these habit-forming drugs, so destructive to the human family."

The General Assembly of North Carolina, 1935, passed a more stringent act to teach this danger to the children of the State in the public schools. Chapter 404. The policy of the State was against the sale of intoxicating liquors—like the policy now of a State System of Highways and Schools. The Pasquotank Act was passed, as shown by its place in the Public Laws 1935, at the end of the session—practically the last act—by common knowledge after midnight. Many had gone home and in the dying hours of a General Assembly that was tired and worn from being in session several months over the appointed time. No notice or opportunity to be heard was given to the opposition. That it was passed hurriedly is perhaps the reason for its vagueness and uncertainty. I do not believe that the manner and method of the passage of this act appeals to the fair-minded people of this State, whatever is their opinion on the subject of liquor.

The record of the vote of 7 November, 1933, shows that 12 of these counties voted against dry delegates to the Constitutional Convention in regard to repeal of the Eighteenth Amendment; and the others for dry delegates by a close margin, except Rockingham. All the other counties of the State voted for dry delegates. There are 100 counties in the State, these counties named in this act have a special privilege over the others.

It is a matter of common knowledge that for months the General Assembly had before it the "Hill Bill"—to repeal the Turlington Act—

which was defeated. This was the sober judgment of the General Assembly—it was a fair contest in the open. All this is cited to show the policy of the State.

The case of *Guy v. Commissioners*, 122 N. C., 471, is easily distinguishable. At the time the decision was rendered (1898) the act of 1908, which was ratified by the people 27 May, 1908, had not been enacted, and the policy of the State was then changed and "against the manufacture and sale of intoxicating liquor."

Article II, sec. 14, of the Const. of N. C., is as follows: "No law shall be passed to raise money on the credit of the State, or to pledge the faith of the State, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the State, or allow the counties, cities, or towns to do so, unless the bill for the purpose shall have been read three times in each house of the General Assembly and passed three several readings, which readings shall have been on three different days, and agreed to by each house respectively, and unless the yeas and nays on the second and third readings of the bill shall have been entered on the journal."

The Pasquotank Bill was not passed in conformity with the above provisions of the Constitution. That it was a revenue measure and pledged the credit of the cities and towns is, in my opinion, beyond question. Sec. 16 is as follows: "In order to carry the provisions of this act into effect, county commissioners are authorized and directed to advance from the general fund of said county such sums as may from time to time be necessary to purchase stocks, fixtures, and equipment, and to provide operating capital and expenses to carry out the provisions and enforcement of this act." See, also, section 10. Under the County Budget System, at the time the act was passed there could be no general fund. *Adams v. Durham*, 189 N. C., 232, does not apply, in that case the money was secured from sale of property.

It was argued that the county may not have to spend any money on these liquor stores—that is not the question. They can and are authorized to make contracts. They have no right "to raise money on the credit," directly or indirectly, of the cities or towns. It is not the amount involved, but the Constitution that prohibits using revenue unless the act is in conformity with the Constitution.

In *Claywell v. Commissioners*, 173 N. C., 657 (659-660), it is said: "And the commissioners have avowed their purpose not to issue to the limit specified, but only the proportionate part of the indebtedness for the remaining townships. But, as said in *Lang v. Development Co.*, 169 N. C., pp. 662-4, in reference to a similar argument: 'It is no answer to this position that in the particular case before us no harm is likely to occur or that the power is being exercised in a considerate or

benevolent manner, for where a statute is being squared to requirement or constitutional provision it is what the law authorizes and not what is being presently done under it, that furnishes the proper test of its validity.' . . . (p. 661) An endeavor therefore to maintain the road commission and leave them without means to carry out any of the duties imposed upon them by law would be worse than useless."

The Liquor Board is a County Board. The members have to take oath of office. It has the power conferred by the act to make contracts, sign notes, etc. (sec. 16). Its powers are analogous to the powers of the County Board of Education to contract for teachers. The Court has held that the contracts of County Board of Education are binding on the counties, and that taxes must be levied to enforce these contracts. *Hampton v. Board of Education,* 195 N. C., 213.

It provides for the unlawful and invalid delegation of legislative power to the Liquor Boards, contrary to the decisions of this State and the United States. *Provision Co. v. Daves,* 190 N. C., 7; *Albertson v. Albertson,* 207 N. C., 547 (550); *Schlecter Poultry case,* 79 Law Ed., 888; 12 Corpus Juris, 911; *Panama Ref. Co. v. Ryan,* 293 U. S., p. 388. Boards are given power to make regulations and rules regarding transportation, sale, and other matters "which said regulations shall have the force and effect of law." (Section 3.) The bill is not justified as an exercise of police power. *State v. Fowler, supra,* p. 292. It does not promote health, peace, morals, and good order, or add to the wealth and prosperity of the State. *Barbier v. Connelly,* 113 U. S., page 27; 12 C. J., 1185. In the exercise of police power, classification must not be arbitrary. *Broadfoot v. Fayetteville,* 121 N. C., p. 418; *State v. Fowler, supra.* It attempts to supersede the law of the land. *State v. Fowler, supra.* The Constitution is supreme over the police power. *State v. Moore,* 113 N. C., 697. It goes without saying that, under Art. VII, sec. 7, Const. of N. C., the sale of intoxicating liquor is not a "necessary expense," nor is it a public purpose or undertaking.

Art. II, sec. 29, is, in part: "The General Assembly shall not pass any local, private, or special act or resolution . . . relating to health, sanitation, and the abatement of nuisances; . . . regulating labor, trade, mining, or manufacturing, . . . *nor shall the General Assembly enact any such local, private, or special act by the partial repeal of a general law,* but the General Assembly may at any time repeal local, private, or special laws enacted by it. Any local, private, or special act or resolution passed in violation of the provisions of this section shall be void. The General Assembly shall have power to pass general laws regulating matters set out in this section." (Italics mine.)

The above section of the Constitution went into effect on 10 January, 1917. *Reade v. Durham,* 173 N. C., 668.

The general law against the sale and manufacture of intoxicating liquor was passed in 1908, and this general law has never been repealed, therefore the present act in controversy comes within the inhibition of the above constitutional provision: "Nor shall the General Assembly enact any such local, private, or special act by the partial repeal of the general law." The *Guy case, supra,* was decided prior to the above constitutional amendment, so was *Garsed v. Greensboro,* 126 N. C., 159. This section of the Constitution, adopted by a vote of the people, was for the purpose of preventing this kind of legislation.

The act provides for "the abatement of nuisances." (Sec. 21.) N. C. Code, 1935 (Michie), section 3180—"Nuisance against public morals," illegal sale of liquor is designated as one. The act regulates trade and manufacturing. The courts have uniformly held that liquor business is trade. *State v. Worth,* 116 N. C., 1007; *Arey v. Comrs.,* 138 N. C., 500; *Wayne Mercantile Co. v. Mt. Olive,* 161 N. C., 121. The act is a local law. *In re Harris,* 183 N. C., 633; *Armstrong v. Comrs,* 185 N. C., 405; *Day v. Comrs.,* 191 N. C., 783. In *State v. Devine,* 98 N. C., 778 (783), it is said: "We do not say that there may not be local legislation, for it is very common in our statute books, but that an act divested of any peculiar circumstances, and *per se* made indictable, should be so throughout the State, as essential to that equality and uniformity which are fundamental conditions of all just and constitutional legislation." *State v. Fowler, supra.*

The act is void for uncertainty and vagueness—it is so loosely and obscurely drawn as to be incapable of enforcement, and therefore void for uncertainty. It says that it shall become effective in the counties named in section 1 when ratified by a majority of the qualified voters in said counties participating in an election to be held in said counties upon the call of the county commissioners of said respective counties. Sec. 24½, in part, says: *"Provided,* that this act shall not become effective until approved by a majority vote of the qualified voters of Pasquotank, Pitt, Beaufort, Martin, Halifax, Edgecombe, Carteret, Craven, Onslow, Wilson, Greene, Lenoir, Warren, Vance, Franklin and Nash counties participating in an election to be held in said counties upon the call of the board of county commissioners of said respective counties, to be held within 60 days from the ratification of this act." The statute is so drawn as to indicate that a majority of the voters in every one of the counties must vote in favor of the act before it becomes effective in any of the counties. No election has been held in Franklin County, and Rockingham voted against the act, so that if the literal meaning of the words of the statute are considered, there has been no election, the limitation of 60 days from date of ratification for holding said election has passed, and hence the act has not been ratified in accordance with section 24½, and therefore it is void.

Again, the act in its title purports to exempt Pasquotank County only from the provisions of the Turlington Act; then in its second section sets up county liquor commissions in each of 16 additional counties, and it then proceeds to outline the duties of the liquor control board of Pasquotank County. Do the provisions applicable to the liquor control commission apply also to the liquor control commissions in the other counties named in the act? And if so, since each liquor commission is a law unto itself, not simply with regard to all State laws, but within Pasquotank County, or in other counties, what shall the other law enforcement authorities do? If there is conflict between the liquor boards and the laws of the Legislature, which shall the law enforcement forces follow? Is the enforcement of the statutes with regard to liquor placed solely under control of the liquor commission? And since each liquor control commission can set up a different set of rules and regulations for each county, this makes it a local and special act for each county, but it is ostensibly an act concerned only with Pasquotank County.

The statute under which the purported authority was given Pasquotank County, and 16 other counties, to permit the sale of liquor, is so indefinite and obscure in its terms as to make it impossible to determine with any certainty its meaning. It is the declared law of North Carolina that "a statute must be capable of construction and interpretation; otherwise, it will be inoperative and void. The Court must use every authorized means to ascertain and give it an intelligent meaning; but if, after such effort, it is found to be impossible to solve the doubt and dispel the obscurity, if no judicial certainty can be settled upon as to the meaning, the Court is not at liberty to supply—to make one. The Court may not allow 'conjectural interpretation to usurp the place of judicial exposition.' There must be a competent and efficient expression of the legislative will." *S. v. Partlow,* 91 N. C., 550.

Speaking to the question, as is now involved in this case, in *Drake v. Drake,* 15 N. C., 110, *Chief Justice Ruffin,* delivering the opinion of the Court, said: "Whether a statute be a public or a private one, if the terms in which it is couched be so vague as to convey no definite meaning to those whose duty it is to execute it, either ministerially or judicially, it is necessarily inoperative. The law must remain as it was, unless that which professes to change it be itself intelligible."

Not only is this the law in North Carolina, it is also the law in other jurisdictions, the general rule being stated in Re. Di. Torio, 8 F. (2d), 279, as follows: "An act which is so uncertain that its meaning cannot be determined by any known rules of construction cannot be enforced. If no judicial certainty can be settled upon as to the meaning of a statute, the courts are not at liberty to supply one. It must be capable of construction and an interpretation; otherwise, it will be inoperative

and void. An act is void where its language appears on its face to have a meaning, but it is impossible to give it any precise or intelligible application in the circumstances under which it is intended to operate." Authorities cited for this rule include *People v. Sweitzer,* 107 N. E., 902, 266 Ill., 459, 1916 B., 586; *People v. Briggs,* 86 N. E., 522, 193 N. Y., 457; *S. v. West Side Street Ry. Co.,* 47 S. W., 959, 146 Mo., 155.

The general rule is well stated in 25 R. C. L., 810: "When an act of the Legislature is so vague, indefinite, and uncertain that the courts are unable to determine with any reasonable degree of certainty what the Legislature intended, or is so incomplete, or is so conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative and void."

As already pointed out, the act is so loosely and obscurely drawn as to be incapable of enforcement, and therefore void for uncertainty, bringing it within the principle upheld in *State ex rel. Hickey v. Levitan,* 210 N. W., 111, 190 Wis., 646, 48 A. L. R., 434—an original action brought to enjoin defendants, one of whom was the State Treasurer, from enforcing the provisions of an alleged unconstitutional act regulating wholesale produce business, and from incurring expenses or paying out money on account of such act. The statute was held void, the demurrer of the defendants overruled, and the injunction made permanent. Certainly, its invalidity is so clear and apparent as to bring it within the principle laid down in *Griffith v. Board of Education,* 183 N. C., 408, where it was said that "An injunction will issue to restrain the holding of an election where there is no authority for calling it, and where the holding of such an election would result in a waste of public funds."

*Injunction is the remedy.* While it is well settled that the remedy to test the constitutionality of a local law, making a violation of the statute a criminal offense, is not open to one who has violated the act, *Moore v. Bell,* 191 N. C., 305, such is not the question involved in this appeal. The question involved here is not the criminal violation of a statute, but an act which undertakes to exempt seventeen counties from the provisions of a State-wide act, and to set up alcoholic control boards. The facts and circumstances of the instant case bring it within the exception described in *Moore v. Bell, supra,* which is relied upon in the Court's opinion as authority for its refusal to uphold an injunction to restrain the enforcement of a void and unconstitutional statute. *Associate Justice Connor* called attention to the exception in *Moore v. Bell, supra,* p. 311, as follows: "In *Advertising Co. v. Asheville,* 189 N. C., 737, *Justice Adams,* in the opinion for the Court, says: '. . . But this general rule is not universal in its general application; on the contrary, it is subject to well recognized exceptions. If it appear that an ordinance is unlawful, or in conflict with the organic law, and that an in-

junction against its enforcement is necessary for the protection of property rights or the rights of persons otherwise irremediable, the writ is available in the exercise of the equitable powers of the court. See the concurring opinion of *Mr. Justice Hoke* in *Turner v. New Bern, supra,* and the concurring opinion of *Mr. Justice Brown* in *R. R. v. Goldsboro,* 155 N. C., 365. The principle is clearly and forcefully enunciated in recent opinions of the Supreme Court of the United States.' In addition to the authorities cited by *Justice Adams,* see *New Jersey v. Sargent,* decided January, 1925, and reported in 70 L. Ed., 177."

While this Court refused to pass upon the constitutionality of a statute in *Wood v. Braswell,* 192 N. C., 588, in which the plaintiffs sought to restrain the collection of a license tax of five dollars upon motor vehicles in Anson County, it was upon the ground that the plaintiffs had not alleged that they were owners of motor vehicles or that the sheriff had collected or attempted to collect the license tax, and it was not suggested that in a proper case the validity of a statute would not be considered in an injunctive proceeding. Indeed, in a decision of this Court, cited as an authority in the Court's decision in the instant case, it was held that ". . . an injunction will issue to restrain the holding of an election where there is no authority for calling it." *Griffith v. Board of Education, supra.* To say that a change of public policy under a void statute is on a parity with a statute imposing a small license, is going entirely too far. *Yarborough v. Commission,* 196 N. C., 284, cannot be held as an authority for the position that this Court will not consider the constitutionality or the validity of a statute, for in that case, although it was stated that "the plaintiff had no interest in any of the land alleged to be subject to condemnation," *this Court did pass upon the constitutionality of the statute involved in that proceeding and upheld its validity.*

The case of *Person v. Doughton,* 186 N. C., 723, which is also cited in the opinion, has no application to the present case, for the reason that it was an application for a writ of *mandamus,* but even so, it was not laid down as an absolute rule that a writ of *mandamus* would be issued by declaring an act of the Legislature unconstitutional, but it was stated that "it is rarely, if ever, proper to award a *mandamus* where it can be done only by declaring an act of the Legislature unconstitutional." Certainly, it was not held that a writ of *mandamus* would issue to enforce the provisions of a void statute. The contrary was held, a writ of *mandamus* would not issue under such conditions.

*St. George v. Hardie,* 147 N. C., 88, also cited in the opinion, has no application to the facts of this case. All that was held in that case was that the master of a schooner could not complain of a law limiting the number of qualified pilots because he was not himself a pilot and did not

seek to become one. It cannot be held as a matter of law that a citizen of Pasquotank, Warren, or Vance counties does not have an interest in an election which sole aim is to upset the declared policy of a State in a general law, applicable to the entire State, and this election is to be held under the provisions of a statute so indefinite and uncertain that nobody can determine its meaning. Certainly, a citizen of the counties affected by this purported statute is not in the same position as that of a master of a schooner who complains that pilots seek to limit their number with a view to providing a living wage for those engaged in piloting vessels.

It is well established that equity will enjoin the threatened enforcement of an alleged unconstitutional law when it is made manifest that otherwise property rights or the rights of persons would suffer irreparable injury. *Advertising Co. v. Asheville, supra.* The general principle has been well stated in *Jewett Bros. & Jewett v. Small* (S. D.), 105 N. W., 738 (740), as follows: "A court of equity has authority to enjoin its (statute's) enforcement if it be unconstitutional, for the purpose of avoiding a multiplicity of suits, and because the plaintiff has no adequate remedy at law."

In 14 R. C. L., 434-5, the principle is stated as follows: "As a void statute affords no protection to those who execute it, such persons may be enjoined from acting thereunder, when there is no adequate remedy at law. The well recognized exception to the general rule, supported by the great weight of authorities, is that where some irreparable injury will be occasioned to a private individual by the acts of a public officer or board by virtue of some alleged unconstitutional law, courts of equity will take jurisdiction and issue an injunction to restrain the commission of the act complained of. This exception is founded on the theory that, as an incident to the protection of property, a court of equity may refuse to recognize as valid a clearly unconstitutional act of the Legislature, because the Constitution is the paramount law of the land, which every suitor can invoke when an infringement of his rights is threatened under some law in violation thereof."

In 32 C. J., 243, sec. 385, we find: "An injunction is proper to restrain an officer from acting under an unconstitutional or otherwise invalid statute, where irreparable injury to complainant will result therefrom." The Court's position that only those who allege that irreparable damage will be done them by the enforcement of a statute are privileged to ask the judiciary to consider the constitutionality or the invalidity of a statute is not in accord with past decisions. Many actions have been brought in the courts to restrain the enforcement of a statute, and it has been customary to pass upon the merits of the contention.

In *Claywell v. Commissioners,* 173 N. C., 657, the plaintiffs, citizens and taxpayers of Burke County, brought an action to restrain the board

of road commissioners from issuing county bonds. Certainly the issuance of $300,000 in bonds would not have caused the taxpayers of Burke County irreparable damage, but this Court considered the merits of the controversy, holding that the invalidity of a portion of the act rendered the whole invalid.

In *Snider v. Jackson County,* 175 N. C., 590, the plaintiff, a resident and taxpayer, brought an action to restrain the board of county commissioners of Jackson County from issuing bonds, levying special taxes, and pledging the credit of the county to the establishment of a farm-life school in that county, basing his application for an injunction upon the fact that no election had been held, as required by law, authorizing the board to incur the indebtedness and to levy the tax. It was not questioned by this Court that he had the right to bring the action, although it could not be alleged that the establishment of the farm-life school would cause him irreparable injury, in fact, it might more logically have been argued that it would benefit him. Instead of booting him out of court because he could not allege irreparable injury, this Court considered the merits of the case. *Associate Justice Brown* wrote the opinion upholding the contention of the taxpayers that an act of the Legislature was void and of no effect.

In *Guy v. Commissioners,* 122 N. C., 471, *supra,* an action was brought in Cumberland County to enjoin the dispensary board of that county from establishing and maintaining the dispensary authorized by chapter 235, Public Laws 1897, and to enjoin the county commissioners from paying out any county funds or pledging the credit of the county for the support of such dispensary and from engaging in the sale of liquor under said act, and to have said act declared unconstitutional. The board of county commissioners was enjoined from paying out any of the county funds, and the plaintiff appealed. This Court did not shut the door in his face on the ground that having alleged no irreparable injury, he could not ask the court to consider the constitutionality of the act of the Legislature. On the contrary, it considered thoroughly the questions raised as to the validity of the statute.

Again, in *Garsed v. Commissioners,* 126 N. C., 159, the plaintiff brought action to annul by injunction the Greensboro dispensary on the ground that an act of the 1899 Legislature was void. No question was raised as to his right to bring the action or as to the right of this Court to pass upon the constitutionality and validity of the act. The plaintiff in that case did not allege irreparable injury, nor was it necessary in this case. The *Garsed case, supra,* was decided before the new constitutional amendment went into effect.

Of course, there are cases in which only an allegation of irreparable injury is sufficient ground for an injunction, one being a civil trespass, *Lumber Co. v. Cedar Co.,* 142 N. C., 411, but it by no means follows

that such an allegation must be made to test the constitutionality of an act. It is too broad and sweeping, too devastating to say that a citizen must allege irreparable damage to him before he can have a court pass upon the constitutionality or the validity of a statute that he and learned counsel, by whom he has been advised, believe to be void and of no effect, contrary in purpose to the declared public policy of the State—its aims in contravention of the State Constitution. If these be not sufficient grounds for a court to consider the merits of the contentions of eminent public citizens, then indeed it may be said that the courts have abdicated from their functions as preservers of the liberties of the people.

In *Russell v. Troy,* 159 N. C., 366, the plaintiff sought to restrain the issuance of $20,000 in bonds after an election had been held upon the ground that the statute under which they would be issued was void. His contention was upheld. No allegation of irreparable damage was considered in passing upon the plaintiff's contentions. Instead this Court acted in its judicial capacity and declared the statute invalid. No doubt the plaintiff was a taxpayer and had an interest to that extent in the action.

It has been argued that the establishment of these liquor stores would provide sufficient revenue to maintain them, and that, therefore, plaintiffs in this action cannot be heard to complain because they would not be damaged as to their property. This takes too narrow a view of the case. The majority have a right to rule, but they do not have the right to do so by illegal means, and certainly any citizen residing within the district included in the purported statute is entitled to the same consideration as a citizen interested in law observance as a taxpayer who may have to pay a few more dollars in taxes because of the issuance of bonds.

In *Paschal v. Johnson,* 183 N. C., 130, the plaintiff brought an action to restrain the issuance of $50,000 in school bonds, in a consolidated school district in Alamance County. While his contention as to the invalidity of the statute under which the bonds were issued was not upheld, there was no allegation of irreparable injury required in order for him to be heard in court. On the contrary, this Court passed upon his contention.

Among the learned counsel appearing for parties in the cases brought before this Court, who considered that they had at least a right to be heard on the merits as to their contentions, that the Pasquotank Liquor Commission Act is void and of no effect, unconstitutional in purpose and aim, and contrary to the legally declared public policy of the State, were the following: *Justice L. R. Varser,* a former member of this Court, Col. John D. Langston, I. C. Wright, J. H. Bridgers, W. H. Yarborough, A. P. Godwin, LeRoy Scott, G. M. Beam, A. D. Ward, K. A. Pittman, and others. They based their cause of action upon the allega-

tion that the statute was unconstitutional, null and void, asking for an injunction not only to restrain the defendants from holding an election but also to restrain them from taking any action under said statute, such as renting or buying stores, or establishing any liquor stores, or buying or selling any liquors or alcoholic beverages, or appointing any members of the Alcoholic Beverage Control Board, or in any way spending money or pledging the faith and credit, or borrowing any money.

Not only was the unconstitutionality and invalidity of the statute ably upheld in learned briefs, but it was also debated at length in oral arguments before this Court. It was not only assumed by counsel for the plaintiffs in this action that they had a right to be heard on the question of the constitutionality and validity of the statute, but also some of the able counsel for the defendants thought injunction the remedy.

R. W. Lucas *et al.* obtained a restraining order from Frizzelle, J., on 24 June, 1935, against the board of county commissioners of Beaufort County *et al.,* returnable before Cranmer, J., at Elizabeth City, *2:30 p.m., 28 June, 1935,* to show cause why the order should not be continued to the trial of the action. Small, J., issued a restraining order against R. W. Lucas *et al.* (a day sooner), *returnable 27 June, 1935, at 4 p.m.,* in it, in part, is the following: "The said plaintiffs, their agents and attorneys, are hereby enjoined and restrained from applying to any court in North Carolina for any order or rule in any way interfering with the defendants in the performance of any of the duties hereinbefore referred to, and let the said plaintiffs above named take notice that they are directed to show cause, . . . if any they have, why this restraining order should not be continued to the final hearing of this cause."

Those representing the board of county commissioners of Beaufort County *et al.* thought a restraining order was the remedy, and had Small, J., issue a restraining order against a restraining order. Perhaps never before has there been such legal procedure in this State. Now the position seems to be reversed, and an injunction is not the remedy.

If the statute was void and of no legal effect, as the plaintiffs contend, they were entitled to an injunction against the holding of the election, *Griffith v. Board of Education, supra,* but if the election had been held, under a void statute, they would have the right to restrain the defendants from proceeding under the statute. To say that a citizen may not raise the question as to the validity of a void statute until it has been shown that he has suffered irreparable injury is going entirely too far, and is not in accord with the decisions of this Court. But, taking all the facts alleged in the complaint, it showed irreparable injury without using the words. The complaint prayed for "general relief," which covered every equitable right in a court of equity.

Some of the other numerous cases in which injunctive relief was granted by this Court, although there was no allegation of irreparable damage to the plaintiff, are *State v. Scott,* 182 N. C., 868; *Newton v. Highway Commission,* 192 N. C., 56; *Carlyle v. Highway Commission,* 193 N. C., 36; see N. C. Prac. & Procedure (McIntosh), sections 857 and 859. *Glenn v. Commissioners of Durham,* 201 N. C., 233.

In *Glenn v. Commissioners of Durham, supra,* the plaintiff secured an injunction to restrain the defendants from issuing certain funding bonds in the amount of $65,000. Affirming the decision of the lower court in granting the injunction, this Court held that the Legislature cannot extend the Constitution even in times of stress, that what constitutes "special purpose" for which an unlimited tax can be levied under the Constitution is a question for the court, *Chief Justice Stacy* declaring: "The Constitution is the protector of all the people. It stands as their shield and buckler in fair weather and foul; and in periods of panic and depression, it is to them 'as the shadow of a great rock in a weary land, a shelter in the time of storm.'" In *Murphy v. Greensboro,* 190 N. C., 268, a taxpayer was held to be entitled to injunctive relief.

In *Raleigh v. Trustees,* 206 N. C., 485, an action for injunctive relief, *Associate Justice Connor,* speaking for this Court, raised no point as to the right to enjoin; nor was the point raised in *Martin v. Commissioners of Wake County, ante,* 354, which he wrote for the Court.

North Carolina has become one of the greatest agricultural and industrial states of the Union. She has gained this prominence since the enactment of the laws against the manufacture and sale of intoxicating liquors. To say that the Turlington Act cannot be enforced is to retreat—"impossibility" is not in the vocabulary of North Carolinians. They helped win the Battle of King's Mountain, which was the forerunner of Cornwallis' surrender at Yorktown. In the War Between the States she was "First at Bethel, furtherest at Gettysburg and last at Appomattox." In the World War, North Carolina, South Carolina, and Tennessee broke the Hindenburg Line.

This act is unconstitutional and should not be upheld, but the Turlington Act enforced. No person, family, community, county, state, or nation has or ever will reach the height of health, happiness and prosperity that is addicted to the use of intoxicating liquor. It is worse than war, pestilence, and famine. Already statistics in one of the counties having liquor stores for September, 1935, show an increase of 300 per cent in drunkenness and 100 per cent in drunken drivers. You cannot have *more* liquor and *less* crime. It is an evil that must be destroyed, a habit-forming drug like opium and other narcotics. The financial unsoundness, not only in wreckage to the individual, but, to sell the intoxicating liquor to get the revenue, five to ten times the amount of money is sent out of the State to foreign liquor dealers.

To my mind, the act is jungle, crazy-quilt legislation, and a blot on the garment of this great commonwealth, and every power should be exerted to wipe this blot off. If the arm of this Court is legally too feeble, the counties must throw off the galling yoke. Then, again, there is another forum, and one in which all the people of the State can have a hearing in regard to such special privilege legislation. The Constitution of this State is the Ark of the Covenant for law and order and good government.

In this dissent I am mindful of Polonius' advice to his son:

"To thine own self be true,
And it must follow, as the night the day,
Thou canst not then be false to any man."
(Shakespeare—*Hamlet.*)

I have disagreed with my brethren of the bench with no intention of being disagreeable. The contest of the organizations in 1908 and 1933 against this evil is worthy to be preserved and emulated. It was not hate, but human sympathy, in the effort to solve the greatest of all evils. "We are against the evil, not against those who differ with us. In other vocations and duties, we would wish them godspeed."

May I add:

"In the sweetest bud,
The eating canker dwells."

For the reasons given, I think the judgment of the court below should be reversed.